FILED

JAN 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT

2007 JAN 16 PM 5: 18

FILING DEPOSITORY

# UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF COLUMBIA

ALBERT A. PEARSALL, III                           :
10406 BIRDIE LANE                                 :
UPPERMARLBORO, MARYLAND 20774   :

Plaintiff,

v.

HON. ALBERTO GONZALEZ,
ATTORNEY GENERAL,
UNITED STATES DEPARTMENT OF
JUSTICE,
950 Penn. Ave., N.W.
Washington, D.C. 20530-0001

    Defendant.

CASE NUMBER  1:07CV00108

JUDGE: Paul L. Friedman

DECK TYPE: Employment Discrimination

DATE STAMP: 01/17/2007

JURY ACTION

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION,  RETALIATION AND REPRISAL, DISPARATE TREATMENT CREATION OF HOSTILE WORK ENVIRONMENT BASED OF RACE AND AGE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

    Comes now Albert A. Pearsall, III, ("Pearsall" or "Plaintiff"), by and through Counsel and alleges against Alberto Gonzalez, Attorney General, United States Department of Justice ("Agency" or "Defendant") as follows:

### JURISDICTION AND VENUE

1.    This action arises under 42 U.S.C. § 2000e 5(f)(1), 28 U.S.C. § 1331, et. seq., 28 U.S.C. 2000e 5(f)(3), 29 U.S.C. 206(d). This Complaint is timely filed within ninety (90) days of receipt of the "Dismissal and Notice of Rights" issued October 18, 2006, pursuant to 29 C.F.R. 1601.28(a) by  Mark L. Gross, Complaint Adjudication Officer, United States Department of Justice, Washington, D.C. and received by Plaintiff on October 24, 2006 (See Exhibit #1).

This Court has jurisdiction over all claims for relief including state claims under the supplemental and ancillary jurisdiction of the federal court. Venue is proper in this Court as shall be set out herein below.

## THE PARTIES

2.      Plaintiff, Albert A. Pearsall, III, ("Pearsall" or "Plaintiff") is a resident of the Prince George's County, Maryland. He lives at the address provided in the caption herein above. At all times pertinent to this Complaint, Plaintiff was a resident of Prince George's County, Maryland and was employed by the Defendant.

3.      Defendant, Roberto Gonzalez is the United States Attorney General and the Chief Administrator of the United States Department of Justice (the "Agency" or "USDOJ" "the "Defendant"), an Agency of the government of the United States of America. USDOJ is an "employer" as defined by 42 U.S.C. § 2000e, and was so situated during all times pertinent herein.

## FACTS

4.      Pearsall is a native of Washington D.C. Metropolitan area and an alumnus of Frank Ballou Senior High School. He received his secondary education at Federal City College (later to become "University of the District of Columbia"), graduating with a bachelors degree in business administration. He earned a masters degree in business from the Graduate School of Business, Morgan State University ("MSU"). Pearsall graduated as a "Goldseker Fellow" from MSU in 1981.

5.      Pearsall entered the federal government through the highly prestigious "Presidential Management Intern" program ("PMI"). The PMI program is designed identify people with exceptional management potential for internship with the federal government and to recruit,

2

place, and develop interns to be future high-level federal managers. The Department places interns in positions, having career paths providing professional growth through work in "line programs", "management support activities", and especially "line management offices." (Positions of the previously identified types generally have career ladders at minimum at or above the grade GS-12 level). At the completion of the two-year internship an agency may convert successful Interns to career or career-conditional appointment at grade GS-12. Interns who are converted to permanent competitive service positions may be subsequently promoted without further competition within their career ladders. These promotions are an exception to competitive merit promotion procedures.

6.       That in 1981, Pearsall was hired as a GS-9 at USDOJ and was subsequently promoted to a variety of positions that provided him an in-depth knowledge of the organization's mission, priorities and operation.

7.       That between 1981 and 2001, Pearsall advanced from GS-9 to GS-14 Including occupying the position of "Branch Chief" at the Office of Justice Assistance ("OJP"), Bureau of Justice Assistance ("BJA").  During his tenure at USDOJ, to 2001,Pearsall performed management and supervisory duties.

8.       That in 2001 Pearsall was reassigned from his supervisory GS-14 position to a non-supervisory position, which made him less competitive for career progression. Pearsall is currently a non-supervisory Senior Policy Analyst GS-301-14 in the Community Oriented Policing Services ("COPS") Department of the U.S. Department of Justice. He remains in that position at this time.

9.       That during his tenure in Office of Justice Programs ("OJP") and COPS Pearsall was an advocate for diversity in employment and for fair treatment of all employees

3

regardless of race, gender, nationality, age, or religion. He exhibited these values openly and actively while employed in OJP. For example, he became a member of an organization known as "Blacks In Government" (which operates with the acronym "BIG") beginning around 1998. BIG has affiliated chapters in federal and state government agencies. Blacks In Government was organized in 1975 and incorporated as a non-profit organization under the District of Columbia's jurisdiction in 1976. BIG's goals are to "promote equity in all aspects of American life, excellence in public service, and opportunity for all Americans."

10.     That in June-July 2001, Pearsall was a witness in connection with the EEO claims of Jeffrey Hall (Hispanic male, EEO Complaint # JP-01- 04) and Greg Morris (white male, EEO Complaint # JP-01-03)₁. Morris and Hall, alleged that they were not selected to GS-14 supervisory management positions because of their ages and races. They also alleged retaliation on the part of agency management officials for their participation in protected activity. The Morris and Hall cases were controversial and unusual in that they were both male reverse discrimination cases and a Hispanic discrimination case. They received substantial notoriety in the OJP. The employees' union was involved and raised issues on behalf of Morris and Hall to senior management and notified OJP staff of these activities.

11.     That Henke was then serving as Deputy Assistant Attorney General OJP during the Morris and Hall cases. She later became Deputy Associate Attorney General.  As Deputy Assistant Attorney General, Henke denied Pearsall's request for reconsideration of the decision to involuntarily reassign him to the Drug Courts Program Office. This denial occurred within 90-days of his testimony in the Morris and Hall cases.

12.     That Henke, who had knowledge of Pearsall's role in the Morris and Hall cases,

---

1. Initially, the complaint of another USDOJ employee, Richard Sutton, PhD, had been joined with those of

approved and authorized the settlement of their discrimination cases. Within a year of the settlement of the Morris and Hall cases, Henke approved and authorized another involuntary reassignment of Pearsall outside of OJP to the COPS Office, using "reorganization" and the purported lack of "available supervisory and management positions" within OJP as a pretext for discrimination. After approval and authorization of the Morris and Hall settlement and shortly after Pearsall's reassignment to COPS, Henke served as Deputy Assistant Attorney General OJP and later became Deputy Associate Attorney General and had oversight of both OJP and COPS.

13.    That contemporaneous with the Morris and Hall case, Henke had overall responsibility for OJP as the Principal Deputy Assistant Attorney General. She had managerial oversight of the OJP EEO function. In addition to approving and authorizing the settlement of the Morris and Hall cases she was aware of Pearsall's role, as a witness, in the Morris and Hall cases. In addition, Henke was aware of Pearsall's, ethnicity, age gender and advocacy for non-discrimination in USDOJ.

14.    That approximately one year after his participation in the Hall and Morris cases and subsequent involuntary reassignment to the Drug Courts Program Office, Pearsall was informed by Henke, Richard Nedelkoff ["Nedlekoff"] (white male) then serving as Director of Bureau of Justice Assistance and Gary Silver ["Silver"] (white male), then serving as Director for the Office of Administration within OJP, that due to reorganization, there were no grant –related management positions available for Pearsall within OJP. Consequently Pearsall was "reassigned' from his Supervisory Grant Programs Specialist position at OJP to a non supervisory Senior Policy Analyst position at COPS. No white or black female

---

Hall and Morris' complaints. Sutton's complaint was resolved independently.

employees similarly situated to Pearsall and over the age of forty at OJP were involuntarily reassigned to positions in external organizations at USDOJ as a result of the alleged "reorganization."

15.    That Pearsall's participation as a witness in the Hall and Morris EEO complaint cases was widely known by the managers throughout OJP and was known to employees at COPS during collaborative work assignments with employees at OJP and discussion within USDOJ. That on September 24, 2002, Henke authorized and approved Pearsall's involuntary reassignment to COPS (the "Reassignment") an organization with a history of failing to reassign and promote African American men to supervisory and management positions. The Reassignment of Pearsall damaged him and branded him as undesirable and inferior with Cammarata and COPS senior management. Further, the involvement of the Associate Attorney General (Henke) to encourage acceptance by COPS of a career employee at Pearsall's level, particularly during a hiring freeze, was unusual and created a negative image of Pearsall with the COPS Office that fueled further discrimination within COPS.

16.    That it was not until April 12, 2004, that Pearsall discovered the motive for the September 2002 Reassignment to COPS from OJP was retaliation for his participation as a witness in the Morris and Hall cases and because of his advocacy, as a black male management employee for non-discrimination and racial, gender and ethnic diversity while at OJP.

17.    That on April 12, 2004, Hall informed Pearsall that Henke was aware of Pearsall's participation as a witness in their respective EEO complaints. Henke was, at that time, the Deputy Associate Attorney General with oversight responsibilities for both the COPS

Office and OJP.

18.    That since the Reassignment, Pearsall has been assigned non-career enhancing duties and responsibilities (clerical) and he has been denied opportunities for career development assignments, training, and professional advancement.  That as a result of the Reassignment, Pearsall has suffered damages in several ways. First, the Reassignment was a loss of status, privileges, benefits, and adequate work life conditions. In fact, it was a functional demotion.  Second, though Pearsall has applied for many supervisory GS-14 and GS-15 positions that would provide him an opportunity for advancement, he has been arbitrarily denied selection to any of those positions. The Agency has failed to non-competitively reassign Pearsall to GS-14 supervisory and management positions. Third, the Reassignment left Pearsall stigmatized and labeled as an employee who is not worthy of promotion or career enhancing duties, and responsibilities, and training. He has been intentionally relegated to duties customarily performed by staff at grades much lower than his.

19.    That the Reassignment was a demotion from a supervisory position to a non-supervisory position has greatly lessened the chances that Pearsall can effectively compete for promotion to GS-15 positions, for which individuals with recent supervisory experience are often preferred.  In addition, the practice of awarding positions based on seniority at COPS, which the division professes to follow intrinsically disadvantages Pearsall due to the Reassignment by eliminating the value of his previous years served in other divisions of the Agency.

20.    That the Agency has violated prohibited personnel management practices of the Federal Merit Regulations and unfairly competed the Supervisory Social Analyst position

by giving less weight to the announced, advertised selection criteria where Pearsall was superior in favor of a criteria that favored Scheider's background.

21.    May 13, 2004, Pearsall was denied the position of Deputy Administrator for State, Local and Child Protection Programs, Office of Juvenile Justice and Delinquency Prevention, JP-04-032-MP, GS-0340-15 TTT, in OJP. That was the final denial of a string of over 30 denials of positions at OJP, where Pearsall was first subjected to discrimination on the bases of retaliation, reprisal, race, age and gender immediately before the reassignment. Henke was influence the selection process for that position.

22.    That the substandard working conditions and functional demotion that accompanied the Reassignment have caused Pearsall to experience substantial stress related health and psychological trauma while at COPS. Pearsall's declining health has forced him to take more health related leave than experienced previously during his twenty-five year government career.

## COUNT ONE: REPRISAL AND RETALIATION IN CREATING AND PERPETUATING A HOSTILE WORK ENVIRONMENT AND DISCOURAGING PARTICIPATION IN A PROTECTED ACTIVITY

23.    That Count One incorporates by reference paragraphs One through Twenty-Two of the Complaint.

24.    That Agency, acting through its agents and employees Henke, Cammarrata and others, by intentionally creating and perpetuating untenable and intolerable conditions and a hostile working environment has violated Title VII of the Civil Rights Act of 1964 (as amended), by committing illegal discrimination.

25.    That Pearsall has been subjected to retaliation and reprisal with respect to his working conditions based on participation in protected activity, *to wit*, participation in EEO

activities and advocacy for non discrimination, while assigned to COPS, *Inter alia.* Pearsall was assigned an office space that was inconsistent with the space offered other similarly situated employees at COPS. Other GS-14 senior policy analysts were assigned large offices with windows. Pearsall was assigned an interior office space with no windows and poor air circulation, though there were several vacant spaces, including the office vacated by Ms. Cammarata that he could have been assigned. (For example, there was an office formerly occupied by Cammarata, near Pearsall's division, however that office, rather than assigned to Pearsall remain vacant for approximately two years after the Reassignment and was used as a storage room rather than be assigned to Pearsall. Unlike all other GS-14 employees, Pearsall was assigned a windowless interior office with two desks, and after several months he had to arrange to have the second desk removed. The air quality in the office was poor and Pearsall complained to the agency about it. He submitted a note from his doctor for an air circulator to the Administration Division.   The agency failed to respond to Pearsall's health equipment request, until after fellow employee, Beverly Alford demanded that Pearsall return the air circulator she allowed him to use following her testimony in his Pearsall's EEO complaint. The assignment of his office space was meant to humiliate, degrade Pearsall and serve as a "stamp of inferiority."

27.     That Pearsall was denied training appropriate and customary for employees with his background and experience. For example, Cammarrata denied Pearsall opportunities for training courses for spurious and fabricated reasons. In one instance, in about December, 2003, Cammarrata alleged that it would "violate law and regulations" for Pearsall to be enrolled in a training course. When asked to cite the applicable law and regulation and provide a copy she could not do so.

28.     That Pearsall was denied the opportunity to telecommute on a temporary basis for medical reasons unless he provided detailed lengthy paperwork though a young white female employee was allowed to telecommute on a full-time basis for years to accommodate having relocated to Pennsylvania for personal reasons. Pearsall has been made an outcast for participating as a witness in EEO complaints against the Agency. . He is not invited to important meetings, strategic planning retreats, budget meetings, and has been systematically denied the opportunity to demonstrate his capabilities, and the opportunity to further develop professionally.

29.     That Pearsall has been excluded from departmental, marginalized and underused as a management employee, humiliated, assigned duties not commensurate with his GS- 14 level and experience and otherwise treated in a manner different from treatment afforded individuals who are not African American, male and /or over 40. As a result, he has been impaired in his ability to obtain supervisory and management positions and has suffered a decline in his health.

**COUNT TWO: DISCRIMINATION DENIAL OF A POSITION OF EMPLOYMENT BASED UPON REPRISAL, RACE, AGE AND GENDER**

30.     Count Two incorporates by reference paragraphs One through Twenty-Nine of the Complaint.

31.     That on January 22, 2004, the employment position of Supervisory Social Science Analyst, GS-0101-14 ("Position One") was advertised. Pearsall was qualified for and applied for Position One. The Agency certified Pearsall as qualified for Position One by the Agency.  Thereafter, he was interviewed for the position.

32.     That on April 19, 2004, Pearsall was informed by Cammarata, that he had not been selected for Position One. He was told that Matthew Scheider (Scheider) a white male

10

under 40 with a GS-13 grade, (whom Pearsall had trained at COPS) was selected for
Position One.

33.    That although Position One had been advertised as being supervisory and Pearsall's
supervisory experience was superior to Scheider's, Pearsall was denied the position. In
contradiction of descriptive advertisements of Position One and its title, Cammarata
informed Pearsall that "supervisory capability" was not required for the Position One.
Cammarata further told Pearsall that skills that Scheider possessed and Pearsall did not,
were determining factors in making Scheider the superior candidate for the position.
Scheider's two predecessors in the position are white and under 40. Pearsall was denied this
position consistent with a pattern of the COPs division of USDOJ not promoting African
American men, in particular, above the GS-13 grade.

34.    That Pearsall was denied Position One on the basis of retaliation and reprisal, his
race (African American) and age (49 years) in violation of Title VII of the Civil Rights Act
of 1964 and the Age Discrimination in Employment Act. Pearsall is a (1) a member of a
protected classes (African American; over 40 years of age) (2) he applied for a position for
which his employer was seeking applicants (3) he was rejected for the position despite his
qualifications and (4) that similarly situated individuals outside the protected group were
treated more favorably.

35.    That prior to his arrival at COPS, it was expressly communicated by Cammarata to
GS-9 Administrative Assistant Angel Winters (African American female) and white
employees with who Pearsall would compete for supervisory positions that despite the fact
that he had been a supervisory GS-14, Pearsall would not be performing supervisory duties
and that his presence would not affect their prospects for advancement to supervisory

positions. That prior to his arrival at COPS, the GS-14 supervisory social science analyst position was vacant and Ms. Cammarata refused to reassign Pearsall to this position and instead competed the position and selected a lesser qualified white female under 40 for the position.

36.    That although Pearsall was granted an interview for Position One, Cammarata, the selecting official, did not seriously consider him for the position. The interview opportunity was simply a ruse and obfuscation and window dressing.

37.    That Scheider was afforded opportunities to participate in training programs pertaining to advancing to supervisory positions while Pearsall was denied similar training.

38.    That Cammarata has consistently placed lower graded GS-13 white employees under 40 in the "Acting Assistant Director" position more frequently and for longer durations than Pearsall in order to create for them work experiences superior to that of Pearsall. She has done this to position them for advancement. Concomitantly, the same opportunities for advancement have been denied Pearsall though he has greater experience, seniority and Knowledge.

39.    That as a result of discrimination, disparate treatment and retaliation, Pearsall has been denied the kind of exposure to the practices and personnel that would have helped his advancement prospects, specifically with respect to Position One.

40.    That although Position One would have been a lateral position for Pearsall, Position One was accompanied by many benefits and opportunities Pearsall is denied in his current position including participation in management meetings, advanced training opportunities, permanently assigned free parking, Blackberry wireless handheld devices for communications enhancement and other important and significant features Pearsall is

12

currently denied, including greater promotional opportunities but provided for all other

managers. Management positions at the GS-15 level credit the **types** of experiences

featured by Position One, particularly the supervisory duties.

## COUNT THREE: DISCRIMINATION ON THE BASIS OF REPRISAL, RACE, AND GENDER

41.     That Count Three incorporates by reference paragraphs One through Forty of the

Complaint.

42.     That the position of Supervisory Program Audit Officer, GS-301-15 ("Position

Two") was advertised as open for applicants. Pearsall was qualified for and applied for

Position Two. The Agency certified Pearsall as qualified for Position Two.

43.     That was invited to and participated in an interview for Position Two.

44.     That on or about April 14, 2004, during a discussion concerning his current position,

Pearsall was informed by Cammarata, Acting Deputy Director for Support at COPS, that he

had been denied selection to Position Two because the individual who was selected for

Position Two, Cynthia Bowie (African American female) had longer tenure in the COPS.

The selection process for this position took place in 2003.

45.     That Pearsall was denied this position of the basis of race (African American) and

gender (male)in violation of Title VII of the Civil Rights Act of 1964. Pearsall is able to

demonstrate a prima facie case of unlawful; discrimination on the basis of race and gender

because (1) he is a member of a protected class (African American male) and (2) he applied

for a position for which his employer was seeking applicants and (3) was rejected for the

position despite his qualifications and (4) that similarly situated individuals outside of the

protected group were treated more favorably.

46.     That although Cammarata stated that it was a division policy to select and promote

according to seniority, Pearsall alleges that he was unlawfully discriminated against on the basis of gender and the Agency's policy of selecting and promoting according to seniority within COPS is pretext. Pearsall observes that if seniority in the division is always the deciding factor in hiring decisions in the division, no African American male can advance in COPS based upon the current makeup of the staff. Pearsall alleges that he was denied this position in line with a pattern within the COPS division of not promoting African American men, in particular above the GS-13 grade.

## COUNT FOUR: DISCRIMINATION ON THE COMBINATION OF REPRISAL, RETALIATION AND RACE,GENDER AND AGE

47.     That Count Four incorporates by reference paragraphs One through Forty-Six of the Complaint.

48.     That with respect to Position One and Position Two to which he was not selected, the Agency by and through its agents and employees, Cammarata, Henke and others, has engaged in the combination reprisal and retaliation and discrimination on the basis of race, gender and age.

49.     That while African American women, white males and white females are promoted to management /supervisory positions in COPS and are promoted to management positions and all three of the latter categories and racial groups who are over 40 are also promoted to management positions in COPS, no African American men and specifically no African American men over 40 have been promoted to management/supervisory positions in COPS.

## COUNT FIVE: DISCRIMINATION IN THE FORM OF REPRISAL

50.     That Count Five incorporates by reference paragraphs One through Forty-Nine of the Complaint.

14

52.     That the Agency including Henke, Cammarrata and others knew that Pearsall was an African American male and over forty years of age when he was engaged in protected activities namely, participation as a voluntary witness in a claim of discrimination against the Agency by Morris (EEO Complaint # JP-01-03) and Hall (EEO Complaint # JP-01-04), at the request of Hall and Morris he testified on their behalf and that Pearsall's testimony and role in the organization as their former supervisor was material and helpful in those cases. Henke knew that the Morris and Hall matters were settled by the Agency.

53.     That on April 12, 2004, Pearsall discovered that as a result of his involvement and as an act of reprisal for his engagement in protected activities, including his testimony in the Morris and Hall cases, Pearsall was involuntarily transferred to COPS from OJP. The involuntary transferred demonized Pearsall within the COPS division and fueled the discrimination by COPS senior management and Cammarata.

54.     That the purpose for Pearsall's voluntary transfer was not for the advancement of the business mission of OJP or COPS but for the purpose of retaliating against Pearsall for his involvement in the Hall and Morris cases and for being a constant advocate for non discrimination at USDOJ.

55.     That as a result of the involuntary reassignment of Pearsall to COPS, Henke, Cammarrata, and Agency senior management engaged in the following forms of discrimination against Pearsall and actively encouraged others to do so by:

        (a). Surreptitiously using "facially neutral" and discretionary personnel actions such as the "competing" of positions that Pearsall could be noncompetitively reassigned to, involuntary transfers, reorganizations, reassignments, and the assignment of duties and responsibilities so as to harm Pearsall in his employment and employment advancement

opportunities. That by use of such surreptitious methods the Agency by and through Henke, Cammarrata and others incorporated use of employment rules, regulations, procedures and employment policies so as to disadvantage, disable and permanently harm Pearsall's employment record and career.

(b) Reducing and restructuring Pearsall's employment duties and responsibilities in such a manner as to discourage and demoralize Pearsall;

(c) Unequal enforcement of particular leave and personnel rules and policies against Pearsall only;

(d) Arranging and modifying official activities such that Pearsall would either be circumvented or not included among senior staff invited to meetings or participate in other activities of record which would advance his employment career;

(e) Excluding Pearsall from being among employees provided opportunities for management and developmental training and other activities which would have assisted him in advancing his career;

(f) Allocating Pearsall employment duties inappropriate for his grade capability, experience and skills;

## COUNT SIX: DISCRIMINATION IN THE FORM OF REPRISAL AND RETALIATION

56.     That Count Six incorporates by reference paragraphs One through Fifty-Five of the Complaint.

57.     That the Agency and its employees and agents, including Henke and Cammarata, were aware that Pearsall had been involved in protected activities namely participation in organizations and projects including participating in an Organization known as "Blacks In Government" ("BIG") and activities which supported diversity in the work place as an

16

advocate.

58.     That the Agency including Tracy Henke and Pamela Commarrata were aware that

Pearsall was engaged in protected activities, namely advocating for racial diversity,

tolerance and advancement of affirmative action and fair treatment to all employees with

the Agency regardless of sex, race, age, and color;

59.     That the Agency and including, Henke and Cammarata, in an effort to discourage,

demoralize and impede Pearsall in the exercise of his civil rights and first amendment rights

and discriminate against Pearsall by denial of equal opportunity to surreptitiously using

"facially neutral" and discretionary personnel actions such as involuntary transfers,

reorganizations, reassignments so as to harm Pearsall in his employment and employment

advancement opportunities. That by use of such surreptitious methods incorporated use of

employment rules, regulations, procedures and employment policies so as to disadvantage,

disable and permanently harm Pearsall's employment record and career. Such surreptitious

methods of discrimination included:

(b) Reducing and restructuring Pearsall's employment duties and responsibilities;

(c) Enforcing rules and policies against Pearsall only;

(d) Arranging and modifying official activities such that Pearsall would not

circumvented or not be included among senior staff invited to meetings or participate in

other activities of record which would advance his employment career;

(e)  Excluding Pearsall from being among employees sent for management and

developmental training and other activities, which would have assisted him in advancing

his career;

17

(f) Allocating to Pearsall employment duties inappropriate for his grade capability, experience and skills;

That the Agency and its employees and agents, including Henke and Cammarata, acted in such a manner so as to engage other employees into executing surreptitious and false methods of discrimination against Pearsall and to perpetuate such methods of retaliation and reprisal to damage Pearsall's career severely, continually and permanently;

60.    That the actions of the Agency described herein were continuous, intense, severe and pervasive. These conditions resulted in the creation and perpetuation of a hostile work environment within which Plaintiff was required to work. Ultimately, through creation and perpetuation of this hostile work environment, the Agency by and through its employees and agents, including Henke and Cammarata and others caused the Plaintiff to suffer the loss of employment opportunities, income, tranquility, reputation and professional career in the Agency and federal government.

### COUNT SEVEN:  RETALIATION AND REPRISAL BY FALSE AND INTENTIONAL BUSINESS DEFAMATION

.    That Count Seven incorporates by reference paragraphs One through Sixty of the Complaint;

61.    That the Agency including Henke, Cammarata and for wrongful purposes of reprisal and retaliation for his involvement in protected acts and because his being an African American male over forty engaged in publishing and proliferating defamatory libelous acts for the purposed of destroying Pearsall's business and employment reputation.

62.    That the Agency by and through its agents and employees, Cammarata and Henke and others engaged in an intentional, subversive and invidious campaign of suppressing positive information concerning Pearsall's employment activities, supervisory and

18

management capabilities and accomplishments which negatively embellished his employment activities.

63.      That the Agency by and through its agents and employees, Cammarrata and Henke and others, falsely and intentionally perpetuated the idea that Pearsall was not worthy of management responsibilities by manipulating unfair selection employment selection processes, manipulating and misusing interviews and employment procedures so as to deny Pearsall Position One and Position Two, for which he was the most qualified candidate

64.      The actions of the Agency and its agents and employees compromised Plaintiff's working conditions and work environment such that on a daily basis Plaintiff faced insubordination, scorn, innuendo and humiliation from his superiors and subordinates. Plaintiff's working conditions were made so intolerable that he suffered from physical and psychological affects making it unnecessarily difficult for Pearsall to accomplish his every day tasks.

65.      That the actions of the Agency in manipulating, subverting, and impeding Pearsall in his employment efforts violated law and public policy of the United States of America.

66.      That the actions of the Agency, its agents and employees in Count caused permanent and irreparable harm to the Pearsall reputation as a good and capable employee amongst his subordinates, peers, superiors and fellow employees in government service permanently damaging his career opportunities, possibilities of success, future in government services and causing him psychological and emotional damage and economic and financial damage.

19

## COUNT SEVEN ACTING UNDER COLOR OF LAW TO VIOLATE CIVIL RIGHTS IN VIOLATION OF 42 USC 1983

67.     That Count Five incorporates by reference paragraphs One through Sixty-Six of the Complaint.

68.     That the Agency, by and through it agents and employees circulated and published negative and false employment information concerning the Plaintiff within and without the Agency, characterizing Pearsall as a person who was unfit and unqualified for various positions of employment which he was denied.   Such information published by the Agency was false and its disclosure violated the laws, regulations and policies of the United Sates.

69.     That the Agency and its employees and agents has neither retracted nor corrected the false information it has published concerning Pearsall.

67.     That publication of false information concerning Pearsall lack of suitability as an employee has caused irreparable damage to Pearsall's career in government service.   The publication of such information has caused diminution of Pearsall's professional reputation among his peers and it has caused Pearsall irreparable harm in his chosen field of work.

68.     That those in the Agency who published such information acted in their official capacities and did so intentionally and in the course of their employments and positions of responsibility.

### WHEREFORE THE PREMISES CONSIDERED, PLAINTIFF PRAYS

That for the actions of invidious discrimination alleged in Count One of the complaint the Plaintiff is awarded damages against the Defendant in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00);

That for the actions of invidious discrimination alleged in Count Two of the complaint the Plaintiff be awarded damages against the Defendant in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00), back pay and benefits

That for the actions of invidious discrimination alleged against the defendants in Count Three of the Complaint, the Plaintiff be awarded damages against the Defendants in the amount of THREE HUNDRED THOUSAND DOLLARS ($300, 000.00) back pay, benefits;

That for the actions of invidious discrimination alleged against the Defendant in Count Four of the Complaint, the Plaintiff be awarded damages against the Defendant in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00);

That for the actions of invidious discrimination actions alleged against the Defendants in  Count Five of the Complaint, the Plaintiff be awarded damages in the amount of  THREE HUNDRED THOUSAND DOLLARS ($300,000.00);

That for the  tortuous acts of alleged against the Defendant in Count Six of the Complaint, the Plaintiff be awarded damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00);

That for the tortuous actions alleged in Count Seven of the Complaint, the Plaintiff be awarded damages in the amount of  ONE MILLION DOLLARS ($1,000,000.00);

That because the above action s by the Defendant in each and every count herein were committed intentionally, willfully and malicious and Plaintiff prays for punitive damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

That the Plaintiff prays for restitution, for total compensatory, punitive and other monetary damages in the amount of  SEVEN MILLION DOLLARS ($7,000,000);

That Plaintiff further demands that Agency place him into the GS-15 position he was denied, with cumulative back pay, bonuses and awards equivalent to that earned by the person wrongfully selected to the positions,

That Plaintiff further demands award of legal fees and costs of the instant litigation,

That Plaintiff further demands that the Agency be ordered to ceases and desist from further acts of retaliation reprisal and any other acts of discrimination;

Respectfully submitted,

John F. Mercer, Esq.
Bar # 25539
Of Counsel
Tec Law Group. PLLC
1000 Connecticut Avenue, N.W.
Suite 600
Washington, D.C. 200036
Telephone:  202.466.3830
Mobile:  240.535.8758
Telecopier:  301.249.4604
Email: jmjmercer@aol.com

Attorney for the Plaintiff

## **JURY TRIAL DEMAND**

The Plaintiff demands a jury trial in this matter pursuant to Rules 38(b) and 5(b) FRCP.

John F. Mercer

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

ALBERT A. PEARSALL, III

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

PRINCE GEORGES CO. MD. 20774

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

JOHN F. MERCER    202.466.3830
TEC LAW GROUP, PLLC,
1000 CONN. AVE. N.W.
D.C. 20036

**DEFENDANTS** HON ALBERTO GONZALEZ, USAG
US. DEPT. OF JUSTICE
D.C.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

CASE NUMBER    1:07CV00108

JUDGE: Paul L. Friedman

DECK TYPE: Employment Discrimination

DATE STAMP: 01/17/2007

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☒ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency
Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

☐ **D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other) OR** ☐ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt
Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if not
administrative agency review or
Privacy Act

2

| ☐ G. Habeas Corpus/ 2255 | ☒ H. Employment Discrimination | ☐ I. FOIA/PRIVACY ACT | ☐ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. Labor/ERISA (non-employment) | ☐ L. Other Civil Rights (non-employment) | ☐ M. Contract | ☐ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC § 2000e-5(f), 28 USC § 1331

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS   ☐   ACTION UNDER F.R.C.P. 23   **DEMAND $** $7,000,000.00   Check YES only if demanded in complaint   **JURY DEMAND:** ☒ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES ☒ NO   If yes, please complete related case form.

**DATE** 1/16/07   **SIGNATURE OF ATTORNEY OF RECORD** _John F. Mercer_

17

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

U.S. DISTRICT COURT
NANCY MAYER WHITTINGTON, CLERK

JAN 17 2007

*"* RECEIVED

✓:\forms\js-44.wpd

**U.S. Department of Justice**

Complaint Adjudication Office

EEOC Number 570-2006-00115X
Agency Complaint Number B-05-2511

---

*950 Pennsylvania Avenue, N.W.*
*Patrick Henry Building, Ste. 5300*
*Washington, DC 20530*

OCT 18 2006

Mr. Albert Pearsall
10406 Birdie Lane
Upper Marlboro, MD 20774

Dear Mr. Pearsall:

This is in reference to your complaint of employment discrimination that you filed against the Department of Justice's Office of Community Oriented Policing Services. Enclosed is the Department of Justice's Final Order and Memorandum in Support of the Final Order. The Department agrees with the Administrative Judge's decision that you were not subjected to discrimination based on either sex, race or reprisal.

<u>Rights of Appeal</u>

You have the right to appeal any part of the Administrative Judge's decision to the Equal Employment Opportunity Commission (EEOC). You may do so by filing your appeal with the EEOC's Office of Federal Operations within 30 days of the date you receive this decision. If you are represented by an attorney of record, the 30-day appeal period shall begin to run on the day your attorney receives this decision. The EEOC requires that you use EEOC Form 573, Notice of Appeal/Petition, a copy of which is attached, to appeal this decision. The Notice should indicate what is being appealed. Please attach a copy of the Final Order to the Notice of Appeal. The Notice of Appeal should be sent to the Director, Office of Federal Operations, EEOC, Post Office Box 19848, Washington, D.C. 20036, by mail, personal delivery, or facsimile (202-663-7022). A copy of your Notice of Appeal must be sent to Marcus Williams, Complaints Manager, Department of Justice, 950 Pennsylvania Avenue, N.W., Room 1246, Washington, D.C. 20530. The Notice of Appeal that you file with the EEOC must contain, or must have attached to it, the date and method by which you sent the copy of your notice to the agency's representative. You have the right to file a brief or statement in support of your appeal, and any such document must be filed with EEOC within 30 days of filing the notice of appeal, in the manner of submission specified above. If you submit a brief by facsimile, the EEOC requires that the brief be limited to no more

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

FILED
JAN 17 2007

07 0108

EXHIBIT # 1

- 2 -

than 10 pages.

You also have the right to file a civil action in the appropriate United States District Court within 90 days of the date you receive this decision, provided you have not already filed an appeal with the EEOC.  In filing your federal complaint, you should name the Attorney General, Alberto Gonzales, as the defendant.  If you have already filed an appeal with the EEOC, you may file in federal court only after 180 days have passed from the date of filing an appeal with the EEOC with no final decision by the Commission.

If you cannot afford to file a civil action, you can ask the court to allow you to file the action at no cost to you.  The court may also provide you with an attorney if you cannot afford to hire one to represent you in your civil action.  Questions concerning when and how to file a waiver of costs should be directed to your attorney or the District Court clerk.

Sincerely,

Mark L. Gross
Complaint Adjudication Officer

cc:  Marcus Williams
     Frances del Toro
     H. Holden Brooks
     Jenny Wu