UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ALBERT PEARSALL,                        )
                                        )
                                        )
Plaintiff,                              )
                                        )
        v.                              )   Civil Action No: 07-0108 (PLF)
                                        )        ECF
MICHAEL MUKASEY, Attorney General,      )
United States Department of Justice,    )
                                        )
Defendant.                              )
_____)

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

After an opportunity to fully respond to Defendant's dispositive motion, Plaintiff, via his Opposition, still fails to offer any evidence, whatsoever, in support of his Complaint. Rather than adduce specific facts in support of his claims, Plaintiff attempts to oppose the instant motion based on his personal beliefs and opinions; assertions that contradict his own deposition testimony, or simply mischaracterize the testimony of other deponents; irrelevant and immaterial statements; and erroneous interpretations of dispositive case law. None of the foregoing can overcome Plaintiff's own deposition testimony and uncontradicted evidence, which establish unequivocally that: (1) three out of Plaintiff's four remaining claims (Counts I, V, and VI) cannot overcome their untimely beginnings; and (2), there is nothing in the record from which a reasonable jury could infer that Plaintiff's non-selection for the Supervisory Social Science Analyst position (Count II) was based on anything other than legitimate, non-discriminatory reasons. Accordingly, this Court should dismiss with prejudice all of Plaintiff's claims.

**ARGUMENT**

I.    **PLAINTIFF'S VOLUNTARY WITHDRAWAL OF COUNTS III, IV, VII, AND VII (SECOND).**

At the outset, the Court should dismiss with prejudice four of the eight counts in the Complaint because Plaintiff has withdrawn these claims either expressly or by failing to respond to Defendant's dispositive motion ("MSJ") in any substantive manner. Indeed, on page 14 of the Opposition ("Opp."), Plaintiff withdraws four claims: Counts III (Supervisory Program Auditor Officer non-selection), IV (discrimination based on age), and VII (Defamation), and his 42 U.S.C. § 1983 claim (mislabeled as a second Count VII in the Complaint).

Although Plaintiff also states in another section of his Opposition that his withdrawal of two of these counts (Counts III and IV) is without prejudice, (Opp. at 3), the reason provided for the request (i.e. that he needs "adequate time for discovery") is not a valid basis on which to save these claims. See Hunter v. Rice, 2008 WL 238951, *3 (D.D.C. 2008). Presumably because Plaintiff participated in ample discovery at the administrative level, (MSJ at 7 n.3), he does not specify what, if any, additional discovery he may need. Moreover, his request is disingenuous because Defendant's argument on Count IV is purely legal in nature, and the disposition of Count III does not require the development of any additional facts.[1] See MSJ at 14–17, 19. Moreover, as Plaintiff has utterly failed to offer any substantive response to Defendant's arguments on these counts, dismissal of these counts is warranted. Opp. at 3 and 14; see Hopkins v. Women's Div.,

---

[1] Defendant argued that: (1) Count IV, a combination age/gender/race claim, is not legally cognizable, and (2) Count III was untimely. As Plaintiff does not dispute the selection date, or the date that he first contacted the EEO counselor, additional discovery is unwarranted on Count III.

General Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing FDIC

v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).

II.    **PLAINTIFF'S 2002 TRANSFER-RELATED CLAIMS (COUNTS I, V AND VI) SHOULD BE DISMISSED.**

Plaintiff's numerous and varied claims continue to change at each stage in the

litigation.[2]  But no matter how Plaintiff characterizes his claims, it is clear that his 2002

transfer from the Office of Justice Programs ("OJP") to the Office Of Community

Oriented Policing Services ("COPS") cannot be considered.[3]  It is this untimely transfer

claim that Plaintiff uses as the lynchpin for the three counts, arguing that his newly added

hostile work environment claims (Count I and VI) can be brought in the first instance in

federal court because they are "reasonably related" to his 2002 transfer.  As fully

discussed in Defendant's opening brief, Plaintiff's retaliatory transfer claim (then

articulated as Count V) is untimely, because he did not contact an EEO counselor within

---

[2] Plaintiff's Complaint characterized Count I as a retaliatory hostile work environment claim, and based that count entirely on alleged hostile work conditions (relating to office space, air quality, etc.), that he encountered since beginning his employment at COPS in September 2002.  Compl. ¶¶ 23-29.  His 2002 transfer from OJP to COPS was not mentioned as a basis for Count I, but only a basis for Count V.  In his Opposition, Plaintiff, for the first time, characterizes Count I as a "retaliatory transfer" claim based on his 2002 transfer, and having abandoned any arguments regarding his office space, now attempts to rely on that single transfer as his primary evidence of hostile work environment for both Counts I and VI, Opp. at 24, as well as his stand-alone retaliatory transfer claim in Count V.  Opp. at 28-33.  Ultimately, Plaintiff's arguments also fail substantively and he should not be permitted to attach the 2002 transfer issue to Count I, which rests solely on Plaintiff's post-transfer workplace discontent.

[3] Despite Plaintiff's various and confusing articulations of Counts I, V, and VI, he has offered only two alleged bases for any claimed retaliation:  (1) his July 2001 interview in the investigation of two other EEO complainants; and (2) his generic participation in Blacks In Government.  Plaintiff has been wholly unable to demonstrate any nexus between either of these activities and any claimed retaliatory acts.  Similarly, Plaintiff has articulated only two types of allegedly retaliatory acts:  (1) his 2002 transfer; and (2) his office workspace and training complaints.  Plaintiff's claim regarding his 2002 transfer is an untimely "discrete act" which must be exhausted, and he does not contest Defendant's position that the claimed workplace annoyances do not legally amount to a "hostile work environment."  All three counts (I, V, and VI), therefore, must be dismissed.

45 days of the transfer, and then voluntarily withdrew the claim at the administrative

level. <u>See</u> MSJ at 17-19. Indeed, Plaintiff does not even attempt to respond to these fatal

flaws in his Opposition. <u>See</u> Opp. generally. As Plaintiff's transfer-related claim was

never exhausted, it cannot be allowed to proceed before this Court.[4] <u>National R.R.</u>

<u>Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002).

### A.    The 2002 Transfer is a "Discrete Act" That Requires Exhaustion.

As articulated in Defendant's Statement of Material Facts As To Which There is

No Genuine Dispute ("SMF"), the following timeline of events is undisputed:

- In June or July of 2001, while employed at OJP, Plaintiff was interviewed regarding the EEO complaints of two other DOJ employees. SMF ¶ 2.

- Over a year later, in September 2002, Plaintiff was transferred from OJP to COPS and into his current position. <u>Id.</u> ¶ 3; Opp. at 7, ¶ 2.

- Plaintiff did not complain about <u>any</u> alleged violations until some 20 months later, when, on May 25, 2004, he contacted the EEO counselor to allege that his 2002 transfer was retaliatory. SMF ¶ 3; Opp. at 7, ¶ 2.

EEOC regulations require that aggrieved employees contact an agency EEO counselor

within 45 days of the date of the "matter alleged to be discriminatory, or in the case of

personnel action, within 45 days of the effective date of the action." 29 C.F.R. §

1614.105(a)(1); <u>see also</u> <u>McCants v. Glickman</u>, 180 F. Supp. 2d 35, 40 (D.D.C. 2001).

Thus, Plaintiff should have, but did not, complain of such an action within 45 days of the

transfer.

_____

[4] Plaintiff's brief is riddled with factual and legal inaccuracies, but one in particular bears clarification. Plaintiff argues that he can carry his burden of making a <u>prima facie</u> case by virtue of the fact that a "less-qualified white male (i.e. someone from outside his protected class) was placed in the Position." Opp. at 33. It is wholly unclear to which "position" Plaintiff refers, i.e., his former position at OJP or the SSSA position for which he was not selected. For sake of clarity, his transfer from OJP was due to a re-organization and Plaintiff has provided no record evidence that his former position was filled by any other individual. The SSSA position was filled with Dr. Scheider, who is a white male.

Defendant and Plaintiff agree that an involuntary transfer[5] that substantially changes the employee's job duties would indeed be an adverse personnel action, and certainly qualifies as a "discrete act" under the Supreme Court's decision in Morgan, 536 U.S. at 110-113.  Certain discrete acts "such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." Id. at 114.  Plaintiff's 2002 transfer certainly falls into this easily identifiable category, and Plaintiff does not suggest otherwise.[6]  Indeed, "discrete discriminatory acts are not actionable if time barred, even when they relate to acts alleged in timely filed charges." Id. at 113; Kalinoski v. Gutierrez, 435 F.Supp. 2d 55 (D.D.C. 2006).  Thus, even if Plaintiff's transfer was related to other timely claims (which it is not), the transfer would still be time barred.  As claims based on discrete acts are required to be exhausted before proceeding to federal court, and Plaintiff failed to adhere to the administrative timelines, the 2002 transfer cannot be considered.

Indeed, despite having conceded that the transfer is a discrete act, Plaintiff then inexplicably argues that, Morgan notwithstanding, the claim need not be exhausted.  Citing the court's opinions in Jones v. Greenspan, 402 F. Supp. 2d 294 (D.D.C. 2005), and Turner v. Dist. of Columbia, 383 F. Supp. 2d 157 (D.D.C. 2005), Plaintiff argues that retaliation claims generally need not be exhausted, or alternatively that his particular

---

[5] Defendant disputes that Plaintiff's 2002 transfer was involuntary, but for the sake of this motion only, agrees to the use of the language adopted by Plaintiff.

[6] To the contrary, Plaintiff spends several pages arguing that that the reassignment is an actionable "adverse action" (see Opp. at 31-33), and then concedes that the transfer is a "discrete act." Id. at 50.  Assuming arguendo, that Plaintiff's transfer was actually involuntary, Defendant would not dispute that an involuntary transfer could be an adverse action.

retaliation claim need not be.  See Opp. at 35.  Plaintiff's argument is misguided and has been expressly rejected by numerous cases in this Circuit.

Jones and Turner are district court cases, not binding on this Court, that have been discredited by subsequent opinions because, although written post-Morgan, the cases nonetheless continue to apply pre-Morgan law.  See Opp. at 24-25; see, e.g., Adams v. Mineta, 2006 WL 367895, *4 n.3 (D.D.C. 2006)(stating that Turner does "not examine whether, in light of Morgan, a plaintiff needs to exhaust her administrative remedies before pursuing a retaliation claim in federal court"); Prince v. Rice, 453 F. Supp. 2d 14, 24 (D.D.C. 2006).

Indeed, this Court's opinion in Coleman-Adebayo v. Leavitt, confirms that exhaustion is not only generally required for retaliation claims, but certainly would be required in this case.  326 F. Supp. 2d 132 (D.D.C. 2006).  As stated by the Court, there is "no reason for the Court to treat most retaliation claims . . . differently from other complaints of discrete acts."  Id. at 138.  The Coleman-Adebayo plaintiff had already filed a timely administrative charge when, in November 2003, she was transferred to a new position within the EPA.  Plaintiff believed that the transfer was retaliatory, but nonetheless waited until February of 2004 to file her administrative charge.  Id. at 135. Despite finding that the 2003 transfer was related to plaintiff's original and timely claims, the Court nonetheless held that the plaintiff was required to bring her retaliatory transfer claim (a "discrete act") to the attention of an EEO counselor within 45 days.  As she had not done so, she had not exhausted her administrative remedies, and could not proceed. Id.

Even assuming that <u>Jones</u> and <u>Turner</u> could be reconciled with <u>Morgan</u> or the other cases from this Circuit, their holding would not apply to the facts of this case. <u>Jones</u> and <u>Turner</u> merely (and errantly) state that a plaintiff who has already filed a timely EEOC charge need not initiate a new charge, or amend an existing charge, for each and every <u>subsequent</u> and <u>related</u> retaliatory act.  <u>Jones</u>, 402 F. Supp. 2d at 298.  This is the argument expressly rejected by <u>Coleman-Adebayo</u>, and is irrelevant to the facts of this case.

Plaintiff's 2002 transfer is a discrete retaliatory act that is neither related nor subsequent to any timely filed charge.  Plaintiff's initial EEOC charge included his retaliatory transfer claim, but the transfer was already untimely because he had failed to raise it with an EEO counselor within 45 days of the decision.  Indeed, he failed to approach the EEO counselor for more than 20 months after the transfer.  Thus, this is not a case like <u>Jones</u> or <u>Turner</u> where the plaintiff made an initial and timely claim of discrimination, and was subsequently subjected to retaliation.  As the very first event complained of by Plaintiff, the transfer was a discrete act that needed to be exhausted.

**B.    Plaintiff Voluntarily Withdrew This Claim at the Administrative Level, and Therefore, Has Not Exhausted the Claim.**

Realizing that his 2002 transfer claim was hopelessly untimely, Plaintiff stipulated to its withdrawal at the beginning of the administrative proceeding.  MSJ at 17, Exhibit 26.  Thus, Plaintiff himself curtailed the investigation of that claim.  Plaintiff then relied on the stipulated dismissal when he refused to answer subsequent interrogatories.  To permit Plaintiff to litigate this claim before this Court would undermine the settlement and conciliation processes that are inherent to the administrative proceeding.  See <u>Butts v. City of New York</u>, 990 F.2d 1397, 1402 (2d Cir. 1993) ("[t]he purpose of the notice

provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a Plaintiff could litigate a claim not previously presented to and investigated by the EEOC.").  Indeed, claims that are brought but then dropped before the agency has a chance to investigate and reconcile it, have not been administratively exhausted.  Miller v. Smith, 584 F. Supp. 149, 154 (D.D.C. 1984).  Because Plaintiff did not complete the administrative process, the claim cannot be considered exhausted and must be dismissed.

## III.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS (COUNTS I AND VI) SHOULD BE DISMISSED.

Because Count V was brought untimely from the outset and subsequently withdrawn by the Plaintiff, he cannot rely on the existence of that claim in an effort to demonstrate that Counts I and VI (which were not raised during the administrative phase of this case), should be considered under a "reasonably related" theory.  Opp. at 24. Although Plaintiff apparently concedes that Counts I and VI were never raised below,[7] he makes the novel argument that they should nonetheless be considered exhausted because they are "reasonably related" to Count V (retaliatory transfer claim).  Id.  In light of Count V's untimely and unexhausted status, Plaintiff cannot now rely on the claim's brief existence as the basis for alleging that his two other, newly formed, claims should be deemed exhausted.  Id.  Not only are these claims unrelated to Plaintiff's 2002 transfer, but to permit such an analysis would defeat the purposes of the exhaustion requirement.

---

[7] By failing to respond to Defendant's arguments, Plaintiff concedes that he cannot maintain a hostile work environment claim based solely on his work space and training complaints.  See Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F.Supp.2d 174, 178 (D.D.C. 2002) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); see also Local Rule LCvR 7(b); Bancouldt v. McNamara, 227 F.Supp.2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (citations omitted).

See Kalinoski, 435 F. Supp. 2d at 75.  Indeed, this Court's opinion in Kalinoski, expressly rejects the argument made by Plaintiff.  In Kalinoski, the court noted that 29 C.F.R. § 1614.105 (which provides the 45-day time limit for counseling) would prevent an employee from bringing in "like or related" claims based on discrete acts that occurred more than forty-five days prior to the plaintiff initiating the original administrative proceeding.  Id.  Here, at multiple times in the administrative proceeding, Plaintiff specifically dispelled any notion that he had a separate hostile work environment claim, and never once claimed that his association with Blacks In Government was in any way related to his case.  See MSJ at 12-14.  Having failed to identify this theory to the investigator, these claims were understandably not investigated, and could not have been the subject of any conciliatory efforts.  Conciliation cannot occur when a plaintiff does not identify the bases for his claims, or the alleged harm he has incurred.  Thus, the Court should dismiss Counts I and VI.

## IV.   PLAINTIFF'S NON-SELECTION CLAIM (COUNT II) SHOULD BE DISMISSED

### A.   There are No Genuine Issues of Material Fact.

As a threshold matter, Plaintiff's Opposition does not comply with Local Civil Rules 7(h) and 56.1.  The Court, therefore, should treat as admitted all facts alleged in Defendant's Statement of Material Facts as To Which There is No Genuine Dispute.  Although Plaintiff purports to submit a statement of disputed facts, see Opp. at 6-13 "Statement of Material Facts of Genuine Dispute, Admissions from Defendant's Motion for Dissmissal (sic) and/or for Summary Judgement (sic)" ("Statement" or "PSMF"), that Statement is deficient because "the numbered paragraphs in Plaintiff's Statement bear no relationship at all to the numbered paragraphs in Defendant's Statement of Material Facts

Not in Dispute."[8] <u>Valles-Hall v. Center for Nonprofit Advancement</u>, 481 F.Supp.2d 118, 123 (D.D.C. 2007). Moreover, for many of the assertions included in his Statement, Plaintiff fails to cite to any record evidence, <u>see</u> PSMF ¶¶ 1, 3, 10, 13, 17, 19, 21, 23, and 24; and cites to deposition transcripts generally, without any specific page citations, <u>see</u> <u>id.</u> ¶¶ 1, 2, 3, 14, 18. Thus, Plaintiff fails to "isolate the facts that the parties assert are material, distinguish disputed from undisputed facts, and identify the pertinent parts of the record." <u>Hunter v. Rice</u>, 480 F.Supp. 2d 125, 130 (D.D.C. 2007) (citation omitted). However, "'[t]he Court is not obligated 'to sift and sort through the record, that is, engage in time-consuming labor that is meant to be avoided through the parties' observance of [the Rule].'" <u>Id.</u> at 130 (citation omitted). Because Plaintiff failed to comply with the Local Rules, the Court should hold that Plaintiff has failed to establish any disputed issues of material fact.

### B. Plaintiff Cannot Salvage His Discrimination Claim.

Even if Plaintiff had complied with the Local Rules, Plaintiff's claim for race and gender discrimination still must fail because, as set forth in the Agency's opening brief, Plaintiff has proffered no evidence to prove that the Agency's reasons for its action were false, and that discrimination was the real reason he was not selected for the Supervisory Social Science Analyst position. <u>St. Mary's Honor Center v. Hicks,</u> 509 U.S. 502, 512 (1993); <u>Weber v. Battista</u>, 494 F.3d 179, 182 (D.D.C. 2003). Plaintiff "must do more than just deny or criticize the proffered reasons" asserted by the Agency. <u>Vasilevsky v. Reno,</u> 31 F. Supp.2d 143, 149 (D.D.C. 1998). Moreover, "'<u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[8] To assist the Court and for ease of reference, Defendant herewith attaches a comparative chart on this issue. <u>See</u> Exh. 29.

judgment; the requirement is that there be no genuine issue of material fact.'"  Jackson v. Gonzales, 2005 WL 3371041, at *6 (D.D.C. 2005), aff'd, 496 F.3d 703 (D.C. Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "At the summary judgment stage, failure on the plaintiff's part to demonstrate the existence of material facts indicating that the proffered reasons are merely pretextual or that the defendant was in fact animated by a discriminatory motive entitles the defendant to judgment." Vasilevsky, 31 F. Supp.2d at 149 (citations omitted).

In this case, despite the extensive amount of discovery that took place over several months at the administrative proceedings stage, (see MSJ, n.3 at 7), Plaintiff is still unable to meet his burden.[9]  There is a complete lack of evidence in the record indicating that Plaintiff's race and/or gender "actually motivated," much less that these protected traits were any factor, in the challenged selection decision.[10]  Reeves v.

---

[9] There is no merit to Plaintiff's claim that at the administrative level, he was unable to compel DOJ to furnish information regarding "the failure to promote and advance Black males, or [OJP employee] Tracey Henke's records regarding Black male employees." Opp. at 16.  Plaintiff never asked for such information.  See generally, Exhibit 29, Agency's Objections and Responses to Complainant's Request for Production of Documents.  Moreover, Plaintiff acknowledged in his deposition that: (1) COPS employs several African-American males in GS-14 positions; (2) African-American males at COPS have been promoted into GS-13 positions; and (3) COPS has promoted African-American individuals over the age of 40 to GS-15 positions.  Exhibit 16, AP Dep. 228-29, 239-240.  Furthermore, from 1995-99, an African-American male over 40 years old was the Deputy Director at COPS, a SES-level position.  See Exhibit 3, Brown Decl. ¶ 3.

[10] Plaintiff has not produced any evidence that race or gender were the topic of any of the discussions during the selection process.  See Opp. generally.  Moreover, the fact that Cammarata, is the same individual who, in 2002, was involved in Plaintiff's transfer from another DOJ component to COPS (Opp. at 5), casts doubt upon any inference that she had discriminatory motives in the non-selection.  See Waterhouse v. District of Columbia, 124 F. Supp.2d 1, 12 (D.D.C. 2000) (citations omitted).  Finally, it should be noted that the third candidate who was not selected for the position was a Caucasian female.  Exhibit 5, Tab D-9, at 28.  While it is true that these facts are not dispositive, they are further evidence that the selection process in this case was legitimate, and one that yielded non-discriminatory results.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000).  Therefore, summary

judgment is warranted.

1.     **Plaintiff Has No Proof That the Agency's Reasons Are Pretextual**

Plaintiff challenges the Agency's non-discriminatory reasons for the selection

decision at issue on two fronts.  Neither of these attempts, however, satisfies his burden.

a.     **Plaintiff Was Not "Clearly The More Qualified Candidate".**

First, Plaintiff asserts that he has established that the Agency's reasons for his

non-selection are pretextual because: (1) "the core skills and experience required for the

position is clearly a disputed issue of material fact," as in his opinion, the required KSAs

listed on the job posting "focus on supervisory and managerial skills" and do not mention

research and analytical skills;[11] and (2) based on his interpretation of the KSAs, position

description and the duties performed by the selectee,[12] the job is primarily "supervisory"

---

[11] The KSAs do not "focus" only on "supervisory and managerial skills."  Opp. at 40-42.
As Plaintiff explicitly stated in footnote 17 of his brief, 3 of the 5 KSA's were the ability
to analyze organizational and operational problems and develop solutions, the ability to
communicate orally, and the ability to communicate in writing.  Opp. at 41.  Even
assuming arguendo that Plaintiff is correct, however, the fact that an employer "based its
ultimate hiring decision on one or more specific factors encompassed within a broader
and more general job description does not itself raise an inference of discrimination
sufficient to overcome summary judgment."  Jackson v. Gonzales, 496 F.3d 703, 709
(D.C. Cir. 2007).  In this case, even if the KSA's do not expressly list "research and
analytical skills," it is undisputed that (1) the KSA's include "the ability to analyze
organizational and operational problems and develop solutions;" (2) the description of the
job duties in the Vacancy Announcement state, among other things, that "The incumbent
will be responsible for supervising and managing a variety of analytical, . . . evaluative
and other professional work in combination of social/behavioral sciences contributing to
the Office's mission through basic research and evaluation activities;" (3) research and
analytical duties are listed among the job duties contained in the Position Description
("PD") that was part of the Vacancy Announcement, and (4) research and analytical
knowledge and skills are included among the requisite knowledge set forth in the PD. See
Opp. at 11, 12, 48; SMF ¶ 9; see also Exhibit 16, AP Dep. 330:8-331:14.
[12] Contrary to Plaintiff's mischaracterization of Dr. Scheider's testimony that a large
majority of his time was spent on supervisory work, Dr. Scheider actually testified that

and Plaintiff, therefore, by virtue of his lengthier supervisory experience, is more

qualified for the job.  Opp. at 41.  This "evidence," however, does not create an inference

of discrimination sufficient to overcome summary judgment.

As an initial matter, Plaintiff's disagreement with the Agency's determination of

the "core" skills and "primary" functions of the position does not create a material issue

of fact.  It is well established in this Circuit that "courts must defer to the employer's

decision as to which qualities required by the job (substantive versus managerial) it

weighs more heavily."  Barnette v. Chertoff, 453 F.3d 513, 517 (D.C. Cir. 2006) (citing

Stewart v. Ashcroft, 352 F.3d 422 (D.C. Cir. 2003)); see also Jackson v. Gonzales, 496

F.3d 703, 709 (D.C. Cir. 2007) ("Particularly given the dynamic nature of the hiring

process . . . we will not second-guess how an employer weighs particular factors in the

hiring decision) (citation omitted).  Thus, whether Cammarata should have "focused on

the research and evaluation criteria" -- rather than, as Plaintiff contends, prior supervisory

experience -- is not the proper inquiry.  See Jackson, 496 F.3d at 708 ("job descriptions

are often phrased in general terms, and employers then make the ultimate hiring decision

in light of more specific factors – such as their strategic priorities and goals at the time,

the strengths and weaknesses of the applicant pool, and the overall skills of and gaps in

their existing workforce, among other factors.  We have said that courts must not second-

guess an employer's initial choice of appropriate qualifications; rather the courts 'defer to

---

only about 20% of his time is devoted to human resource-type supervisory work, 10% is
devoted to professional development, and the remaining 25% supervisory work discussed
involves technical supervision (reviewing work product, providing guidance on
publications, etc.) that requires advanced research and evaluation skills.  Exhibit 15, MS
Dep. 63:14-70:22, 75:22-76:14.

the [employer's] decision of what nondiscriminatory qualities it will seek' in filling a
position) (citations omitted).

This is particularly true where the undisputed facts demonstrate that there is no merit
to Plaintiff's contention that the "core" skills and experience required for the position are
years of supervisory experience.  Opp. at 41.  Nowhere in the Vacancy Announcement or
Position Description is there any mention of a requirement that the person have prior
supervisory experience.  In fact, the uncontroverted evidence establishes that:

- While the position was supervisory, the duties of the Supervisory Social
  Science Analyst included a technical component which entailed "perform[ing]
  a variety of senior level management, <u>analytical</u>, administrative, <u>evaluative</u>
  and other professional work in a combination of <u>social and/or behavioral</u>
  <u>sciences</u> contributing to the Office's mission through program and policy
  support and <u>evaluation</u>[,]" and "lead[ing] senior level policy <u>analysis</u> activities
  . . ., direct[ing] and oversee[ing] internal <u>assessments</u> and external efforts,
  including senior level liaison with . . . organizations engaging in . . . <u>research</u>
  <u>or evaluation</u> in support of the COPS Office . . ." SMF ¶ 8; <u>see also</u> Exhibit 6,
  ROI, Tab E-14 (emphasis added).

- The requisite knowledge for the position included:  "[p]rofessional mastery of
  . . . behavioral and social sciences, . . . a demonstrated ability to design and
  carry to completion research projects of substantial complexity[;]"
  "professional mastery of advanced research design and experimental
  methods[;]" "professional mastery of advanced qualitative and quantitative
  systems, behavior concepts and analysis methods[;]" and "professional
  knowledge of new developments in the social and behavioral sciences as they
  pertain to the field of criminal justice. . . ."  SMF ¶ 9; <u>see also</u> Exhibit 6, ROI,
  Tab E-14.

- The required KSAs included the ability to communicate effectively in
  performing supervisory or leader work, <u>the ability to</u> supervise, the ability to
  analyze organizational and operational problems and develop solutions, the
  ability to communicate orally, and the ability to communicate in writing.
  SMF ¶ 8; PSMF ¶ 5;  <u>see also</u> Exhibit 6, ROI, Tab E-14 (emphasis added).

Equally without merit is Plaintiff's claim that he was "significantly better
qualified" than Dr. Scheider.  Plaintiff attempts to support his opinion that he was
"significantly better qualified for the job" by arguing that he previously held other
supervisory positions in other offices (although he never served as a Supervisory Social

Science Analyst, much less a Social Science Analyst).[13]  Opp. at 42.  Although Plaintiff

asserts that "[t]he disparity between [his own] qualifications and experience and those of

the selectee are overwhelming, both in terms of quantity and quality," the only disparity

that he points to is his eight years serving as a supervisor in another position, in another

component, compared to Dr. Scheider's "limited" supervisory experience.[14]  Opp. at 42.

Such evidence, however, would not be "sufficient evidence from which a reasonable jury

could conclude that there was a wide and inexplicable gulf between the qualifications of

[the applicants, and therefore a basis to] infer discrimination from the agency's choice."

Jackson, 2005 WL 3371041, at *11; see also Horvath v. Thompson, 329 F.Supp.2d 1, at

*8 n.16 (D.D.C. 2004) (finding inapposite plaintiff's argument "that he should have been

selected [for a supervisory position] because he 'ha[d] prior experience as a supervisor,'

"where the experience was not in the same division as the vacancy, and "more

importantly, it was for [the Selecting Official] to evaluate the relative value of the

candidates' managerial or supervisory experience.") (citation omitted).  Not only does

---

[13]  Contrary to Plaintiff's contention, these two facts would not compel "a reasonable
employer" to find Plaintiff more qualified for the job.  Indeed, the lack of merit of his
claim is demonstrated by analogizing the situation to a General Counsel vacancy.  The
mere fact that one candidate had more supervisory experience than another candidate
would not make that candidate the most qualified if the candidate with the supervisory
experience did not have a law degree, or familiarity with and/or knowledge of the
specific areas of law relevant to the General Counsel's duties.

[14]  Plaintiff takes out of context one comment from a panel member's notes.  Opp. at 42.
The panel member testified: (1) her notes reflected only her initial impressions of Dr.
Scheider's supervisory experiences based on his interview (Exhibit 9, BA Dep.75:17-
79:19); (2) after reviewing his application materials, she believed he had the skills and
leadership abilities to be a supervisor (Id. 75:17-79:19); and (3) Dr. Scheider
demonstrated the "highest potential." (Id. 97:6-99:18).  Her notes also stated "during the
interview, [Plaintiff] Al did not offer a plan for leading the division and his strongest
competitor did provide a very detail [sic] plan.  I also believe that Al would have to exert
tremendous effort to command the professional respect of the PPSE staff and establish
himself as their leader."  Exhibit 8, ROI, Tab E-17.

Plaintiff admit that "years of experience do not necessarily make an individual more qualified," (Opp. at 43), but also our Circuit has rejected such a claim under similar circumstances.  See Barnette, 453 F.3d at 517 (finding no evidence of pretext even where selectee had less supervisory experience over all).

Moreover, Plaintiff's reliance on Kalinoski, on this issue, is misplaced.  In that case, the plaintiff alleged that the agency discriminated against her when it involuntarily transferred her out of a job she had held for eight years, and then did not select her when the agency subsequently issued a vacancy announcement for that same position. Kalinoski, 453 F.Supp.2d 55.  The court concluded that the plaintiff had met her burden of establishing pretext based on "superior qualifications" where she produced unrebutted evidence that (1) she had received a perfect 100% score on the pre-interview screening compared to the 96.5% score received by the selectee; and (2) she had excelled in the exact same position for nearly eight years.  Id. at 71.

Contrary to Kalinoski, Plaintiff in our case has no such proof that he was objectively the superior choice.[15]  Rather, the facts demonstrate that it was selectee and not Plaintiff who received a higher pre-interview score.  SUMF ¶ 5.  Moreover, it was selectee and not Plaintiff who had worked in an outstanding manner for the past five years as a Social Science Analyst.  SUMF ¶¶ 19, 20, 21.  Because it is undisputed that the job duties of the Supervisory Social Science Analyst entailed all of the duties of the Social Science Analyst, it was Dr. Scheider (and not Plaintiff), whom, therefore, had prior experience performing many of the exact same job duties performed by the Supervisory Social Science Analyst.  Exhibit 15, MS Dep. 59:20-21.  Therefore, if any analogy could be

---

[15] Plaintiff does not dispute Dr. Scheider's other qualifications for the job.  SMF ¶¶ 15-19.

drawn to <u>Kalinoski,</u> it would be that Dr. Scheider and not Plaintiff was "significantly better qualified" for the job.

### b. There Is No Evidence That Cammarata's Reasons Were False

#### i) Plaintiff fails to prove that Cammarata's observations about Plaintiff were anything other than her honest belief

Plaintiff tries, but is unable, to create a disputed fact about Cammarata's observations of Plaintiff's work performance and interview performance. Specifically, Plaintiff alleges that Cammarata's observations about Plaintiff's work performance are contradicted by performance evaluations received from previous supervisors, an isolated positive statement about his performance in a 2004 email, a 2003 performance award document, and the deposition testimony of one of the interview panel members. Opp. at 45-46.

None of this evidence, however, is relevant nor does it create any disputed material fact, particularly because Plaintiff admitted at his deposition that he was aware of three of the performance issues that led Cammarata to form the impression that he was not organized, not brief in discussions, and not an independent thinker or doer. Specifically, Plaintiff admitted that he was aware: (1) grantees were complaining that they were leaving him voice mail messages, but not getting any response; (2) Plaintiff failed to hold any team meeting or to have much communication with team members for the first seven months after he was assigned responsibility for serving as the Police Integrity team's leader; and (3) Plaintiff informed Cammarata that he was "overwhelmed" with integrity grants. SMF ¶ 21. Moreover, contrary to Plaintiff's claim that "[t]here is no record of disappointment in the Plaintiff's job performance," (Opp. at 9), Plaintiff testified about several emails documenting these issues with his performance.

Exhibit 16, AP Dep. 214:11-220:25, 219:22-220:25, 242:9-244:24; Exhibit 5, ROI, Tab

D-9, at 29-30; Exhibit 17, 2/26/04 email chain between Cammarata and Pearsall.

Even, assuming for the sake of argument, that Cammarata's impressions are

contradicted by the formal evaluations Plaintiff received from prior supervisors, isolated

positive statements regarding his abilities, or Alford's assessment of his work, none of

these contentions establish that Cammarata was not telling the truth when she based her

non-selection decision, in part, on her impressions. It is well-established that "the

question 'is not 'the correctness or desirability of [the] reasons offered . . . [but] whether

the employer honestly believes the reasons it offers.'" Jackson v. Gonzales, 2005 WL

3371041, at *9 (D.D.C. 2005) (citations omitted), aff'd, 496 F.3d 703 (D.C. Cir. 2007).

Moreover, "[i]t is the perception of the decisionmaker which is relevant.'" Horvath v.

Thompson, 329 F. Supp.2d 1, 6 n.3 (D.D.C. 2004) (citation omitted).

Here, it is undisputed that Cammarata (not Plaintiff's prior supervisors or Alford)

made the selection decision. It is also undisputed that Cammarata was not aware of

Plaintiff's performance evaluations from his OJP supervisors when she made her

selection decision as Plaintiff did not provide them to her. Exhibit 7, PC Dep. 215:20-

216:4. Nor were any of Plaintiff's prior supervisory evaluations of his performance

considered in the selection decision. Exhibit 9, BA Dep. 86:9-87:15; Exhibit 10, JF Dep.

108:18-109:2.

Even if assuming arguendo, Plaintiff's prior supervisors did not have the same

assessment of Plaintiff's performance as Cammarata, such assertions would not create

material issues of fact. See, e.g., Young v. Perry, 457 F. Supp.2d 13, 21 n.2 (D.D.C.

2006). Furthermore, even if Cammarata's impressions were a mistake, a point Defendant

does not concede, "[e]vidence that the reasons given by an employe[r] for the employment decision were not the 'real' ones does not prove [] discrimination, it only proves that some other reason motivated the employer. Absent some evidence that the real reason was the employee's [protected characteristic] . . . it is impossible for an employee to survive summary judgment." Vasilevsky, 31 F. Supp. 2d at 149 (citation omitted).

Plaintiff's reliance on isolated statements in a 2004 email and a 2003 performance award document, as well as Alford's alleged assessment of his work, does not require a different conclusion. Opp. at 45-47. Courts have held that evaluations and general averments of an employee's adequate performance are insufficient to create a genuine issue of fact as to an employer's motives. Jackson, 2005 WL 3371041, at *12 n. 17 (rejecting plaintiff's argument that he has shown pretext where his ratings for the promotion were contrary to his previous performance evaluations). Obviously, a supervisor may make positive statements about the work an employee is doing, and such statements do not mean that the supervisor is lying when she subsequently does not promote the employee to a different job. Moreover, Plaintiff's attempt now to rely upon Alford's testimony is ironic given that he testified at his deposition that Alford was not in a position to evaluate his performance.[16] Exhibit 16, AP Dep. 114:22-115:14.

Finally, Plaintiff makes a weak attempt at establishing pretext by arguing that Cammarata improperly relied on the subjective impressions she formed about Plaintiff during the interview. Opp. at 44-47. While Cammarata clearly had objective reasons for

---

[16] Plaintiff's testimony is consistent with that of Alford, who testified that she was not in a position to assess Plaintiff's performance as team leader and she never had any sort of supervisory authority over Plaintiff. Exhibit 9, BA Dep. at 23:18-24:8.

selecting Dr. Scheider, there is nothing inherently suspect about the use of "subjective"

criteria in selection decisions.  Indeed, this Court has recognized that in cases, such as the

instant one, where the plaintiff was not a "markedly better candidate" than the selectee,

the holding in <u>Aka</u> (that use of "subjective" criteria may lead to an inference of

discrimination") is not applicable.  <u>See, e.g.</u>, <u>Horvath</u>, 329 F. Supp.2d at 9 (holding

selecting official entitled to emphasize the "need for initiative," where selecting official

was choosing a managerial employee and relied on both subjective and non-subjective

factors).  Even one of the cases cited by Plaintiff, <u>Farber v. Massiollon Bd. Of Educ.</u>, 917

F.2d 1391, 1399 (6th Cir. 1990), recognizes that "[t]he use of subjective criteria is

permissible in the selection of management positions."  <u>See</u> Opp. at 47.  Moreover, "[a]

subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the

defendant articulates a clear and reasonably specific factual basis on which it based its

subjective opinion."  <u>Laboy v. O'Neill,</u> 180 F. Supp. 2d 18, 23 (D.D.C., 2001) (<u>citing</u>

<u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc), <u>aff'd</u>, 2002

WL 1050416 (D.C. Cir. Mar. 13, 2002)); <u>see also</u> <u>Brown v. Small</u>, 437 F. Supp. 2d 125,

131, 135 (D.D.C. 2006) (affirming summary judgment where defendant did not select

plaintiff based on her interview performance, including her "lack of enthusiasm for" the

position and failure to "'present herself during the interview as someone who was overly

interested in the position.'").  Therefore, even if the decision to select Dr. Scheider, rather

than Plaintiff, is deemed to have been based on subjective criteria, the Agency is entitled

to judgment as a matter of law.

     **ii)  Plaintiff fails to prove that Cammarata's focus on research
     and evaluation criteria were anything other than her honest
     belief**

Plaintiff's last argument is equally unavailing. Specifically, Plaintiff asserts that Cammarata's focus on research and evaluation criteria is pretextual because the position description for the 2004 vacancy announcement was identical to the vacancy announcement for the position in 2003, and the position description states that 45% of the job entails "Exercis[ing] Supervisory and/or Managerial Authorities." Opp. at 48. As discussed previously, Plaintiff, however, "must do more than just deny or criticize the proffered reasons of defendant." Vasilevsky, 31 F. Supp.2d, at 149. Even if Plaintiff's assertions are taken as true, it does not call into question the fact that Cammarata wanted to focus on research and evaluation criteria. As Cammarata testified and Plaintiff does not dispute, Cammarata's focus on such criteria was based, in part, on her desire to address two concerns. SMF ¶ 12. Moreover, as discussed infra at 14, it is well-established not only that agencies have the discretion to determine what criteria are more important or significant when filling a position, but also that agencies have the discretion to take into consideration criteria that are not contained in the vacancy announcement.[17] For all of these reasons, Plaintiff's argument must fail.

## V.    PLAINTIFF'S PUNITIVE DAMAGES AND COMPENSATORY DAMAGES CLAIMS SHOULD BE STRICKEN.

To the extent that the Court permits Plaintiff to pursue any of his claims, the Court should strike both Plaintiff's claims for compensatory and punitive damages. In his Opposition, Plaintiff voluntarily withdraws his punitive damages claim. See Opp. at 29. Plaintiff also concedes that he abandoned his compensatory damages claim at the administrative stage. Yet, he now argues that because he withdrew his compensatory

---

[17] To the extent Plaintiff also argues that Dr. Scheider was pre-selected, (Opp. at 1 n.2), it is well-recognized that "preselection itself does not violate the law so long as it is based on the qualifications of the party and not on a basis prohibited by Title VII ... ." Kundra v. Abraham, 2007 WL 1821264, at *7 (D.D.C. 2007)(citations omitted).

damages claim "in the interest of a non-adversary proceeding," he should not be held to that decision in this Court.  <u>Id.</u>

Plaintiff's current statement is disingenuous, because the decision to abandon his compensatory damages claim was made during the extensive discovery at the administrative level.  MSJ at 7, n.3.  Moreover, contrary to Plaintiff's claim, he did not withdraw his compensatory damages claim during his deposition, nor was it made under any circumstances involving duress.  <u>See</u> Opp. at 15. n. 12.  Instead, in response to Defendant's written discovery requests regarding his claimed medical and psychological damages, Plaintiff, through counsel, stated:  "To save himself from further personal and professional embarrassment, Complainant has determined to waive his right to seek damages for physical ailments and emotional distress related to his discrimination at COPS on the basis of his race, gender and age."  <u>See</u> MSJ at 31; Exhibit 28, Complainant's Responses and Objections to Agency's Interrogatories at 7.  As the purpose of the exhaustion doctrine is to allow for complete investigation of claims, with a hope that the parties' disagreements can be resolved, it would be inconsistent with those goals to permit a plaintiff to hide any actual damages he incurred at a stage when the potential for settlement is highest, and then bring forth those same damages in federal court.  <u>See</u> <u>Miller v. Smith</u>, 584 F. Supp. 149 (D.D.C. 2006).  Accordingly, the Court should not permit Plaintiff to pursue the compensatory damages that he expressly disowned during the administrative phase.

## **CONCLUSION**

For all the foregoing reasons, the Agency's Motion should be granted and

judgment entered in favor of the Defendant.

Dated: March 7, 2008                    Respectfully submitted,

                                        /s/
                                        _____
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney


                                        /s/
                                        _____
                                        RUDOLPH CONTRERAS, D.C. BAR # 434122
                                        Assistant United States Attorney

                                        /s/
                                        _____
                                        Mercedeh Momeni
                                        Assistant United States Attorney
                                        555 Fourth Street, N.W.
                                        Civil Division
                                        Washington, D.C.  20530
                                        (202) 305-4851

*Of Counsel:*

Kathleen Teal
Associate General Counsel

and

Jenny C. Wu
Associate General Counsel
Office of Community Oriented Policing Services
U.S. Department of Justice
Washington, D.C.  20530

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of March, 2008, I caused to be served,

by the Court's Electronic Case Filing System, a true and correct copy of the above

*Defendant's Reply in Support of its Motion to Dismiss or in the Alternative for Summary*

*Judgment* on counsel of record:

/s/

_____

MERCEDEH MOMENI
Assistant U.S. Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 305-4851

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ALBERT PEARSALL, | ) |  |
|  | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No: 07-0108 (PLF) |
|  | ) | ECF |
| MICHAEL MUKASEY, Attorney General, | ) |  |
| United States Department of Justice, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF MATERIAL DISPUTED FACTS**

| Para. | Defendant's Response |
|---|---|
| 1. | **First Sentence:  Immaterial\*, Undisputed.**<br><br>**Second Sentence:  Immaterial, Undisputed.**<br><br>**Third and Fourth Sentences:  Unsupported.\*\***  Plaintiff's cited deposition testimony does not speak to his supervisory experience.   Angel Smith's Interrogatory responses contain her understanding (based on Plaintiff's own statements) about Plaintiff's supervisory experience.  As such, her responses are inadmissible hearsay, and provide no support for Plaintiff's contention.<br><br>\* Because the facts contained in this sentence does not "affect the outcome of the case under governing law," Nails v. England, 311 F. Supp.2d 116, 121 (D.D.C. 2004), they are, by definition, immaterial.  Defendant adopts this standard for each and every fact labeled "Immaterial" by Defendant.<br><br>\*\* This Court's Local Rule 56.1 requires that oppositions to summary judgment motions contain a "separate concise statement of genuine issues necessary to be litigated, *which shall include references to the parts of the record relied on to support the statement*."  (emphasis added).  The Supreme Court's opinions in Celotex Corp. v. Catrett, 477 U.S. 317 (1986) and Anderson v. Liberty Lobby, 477 U.S. 242 (1986), as well as the D.C. Circuit's opinion in Frito-Lay, Inc. v. Willoughby, 863 F. 2d 1029 (D.C. Cir. 1988), confirm that purported statements of fact that are unsupported by the record cannot be used to carry the non-moving party's case to trial.  The Court should disregard each |

| | |
|---|---|
| | and every statement made by Plaintiff where he has not identified specific and admissible evidence to support his statement. |
| 2. | **First Sentence:  Undisputed for purposes of this motion.**  For purposes of this motion only, Defendant does not dispute that Plaintiff was "involuntarily" transferred in September, 2002.<br><br>**Second Sentence:  Immaterial, Unsupported.**  Whether Plaintiff made any complaints to his managers is irrelevant to the issue of whether he timely initiated an EEO charge, which is governed by the regulations found at 29 C.F.R. § 1614.105 et seq.  In addition, Plaintiff's failure to provide any specific page citations to any of the cited depositions makes it impossible for Defendant to verify the validity of the claim, and determine whether or not it would be disputed.<br><br>**Third Sentence:  Undisputed.** |
| 3. | **First Sentence:  Immaterial, Unsupported.**  Defendant does not dispute that Plaintiff applied and was not selected for the challenged GS-14 Supervisory Social Science Analyst position in 2004.  Any remaining government positions that Plaintiff may or may not have applied for, and has not challenged, are immaterial to this motion.  In addition, Plaintiff's failure to provide any specific page citations to any of the cited material makes it impossible for Defendant to verify the validity of the claim, and determine whether or not it would be disputed. |
| 4. | **First Sentence:  Mischaracterized, But Defendant Does Not Dispute the Underlying Facts.**[1]  Defendant does not dispute that "ability to supervise" was listed in the KSAs, but objects to Plaintiff's unsupported characterization that they were a "critical element."  Moreover, none of the evidence cited by Plaintiff supports this characterization.   While none of the evidence cited by Plaintiff supports his contention that Plaintiff's experience was "superior," but in a different section of her testimony, Ms. Cammarata states that Defendant was rated higher than selectee in "supervisory experience," although Dr. Scheider had sufficient supervisory experience to be considered qualified for the position.  PC Dep. 205:19 – 206:13; 207:23 – 208:1. |
| 5. | **First Sentence:  Undisputed.** |

[1] In numerous places in his Statement of Material Disputed Facts, Plaintiff improperly mixes actual facts with his own unsupported conclusions.  In these cases, Defendant frequently takes issue with Plaintiff's inaccurate characterizations, but does not contest the limited underlying facts.

| 6. | **First Sentence:  Undisputed.** |
|----|----|
| 7. | **First Sentence:  Undisputed.** |
| 8. | **First Sentence:  Conclusory, Unsupported.**  Defendant objects to Plaintiff's characterizations regarding leadership experience, and alleges that the cited portion of Dr. Scheider's deposition demonstrates that he spends approximately 45% of his time supervising, the majority of that time (25% of his total time) is spent doing technical reviews of the staff's work.  Dr. Scheider notes that only about 20% of his time is spent doing human resource type supervision.<br><br>**Second Sentence:  Mischaracterized, But Defendant Does Not Dispute the Underlying Facts.**  Defendant objects to Plaintiff's characterization of the "propensity of the duties for the position," but does not dispute that Pam Cammarata testified that on a day to day basis, the SSSA performed "supervisory," and "technical supervisory" duties. |
| 9. | **First Sentence:  Immaterial, Mischaracterized,  Unsupported.**  Plaintiff's citation to Cammarata's deposition does not support his assertion, but instead, addresses whether Plaintiff had a performance appraisal attached to his application for the SSSA vacancy.  Moreover, Plaintiff testified in his deposition about several emails documenting performance issues.  Exhibit 16, AP Dep. 214:11-220:25, 219:22-220:25, 242:9-244:24; Exhibit 5, ROI, Tab D-9, at 29-30; Exhibit 17, 2/26/04 email chain between Cammarata and Pearsall.<br><br>**Second Sentence:  Immaterial, Undisputed for purposes of this Motion.**  While Defendant may contest Plaintiff's characterization of the cited document, the document speaks for itself.  In addition, general averments of an employee's adequate performance are insufficient to create a genuine issue of fact as to an employer's motives.  Jackson, 2005 WL 3371041, at *12 n. 17. |
| 10. | **First Sentence:  Undisputed for purposes of this Motion.**  Defendant responds that Plaintiff's resume and application speak for themselves, and are included in the record.  For purposes of this Motion only, Defendant does not dispute the facts as presented in those documents.<br><br>**Second Sentence:  Unsupported.**  As Plaintiff has failed to cite any record evidence, Plaintiff cannot create a material disputed fact.  *See Celotex Corp.* and *Frito-Lay*, *supra*. |
|  |  |

| 11. | **First Sentence:  Mischaracterized, But Defendant Does Not Dispute the Underlying Facts.**  While Defendant does not contest that Plaintiff had more years of supervisory experience than Dr. Scheider, none of the evidence cited by Plaintiff supports his contention that the panel members agreed that Plaintiff was "more qualified" in the area of supervisory experience.<br><br>**Second Sentence:  Immaterial, Unsupported.**  Plaintiff has provided no support for the fact that the panel members were unaware of any poor job performance.  To the contrary, Plaintiff himself testified about several emails documenting performance issues.  Exhibit 16, AP Dep. 214:11-220:25, 219:22-220:25, 242:9-244:24; Exhibit 5, ROI, Tab D-9, at 29-30; Exhibit 17, 2/26/04 email chain between Cammarata and Pearsall.  In addition, Plaintiff has only cited the testimony of Beverly Alford (not testimony from the whole panel), who merely acknowledges that she has never discussed Plaintiff's performance with anyone. |
| :---: | :--- |
| 12. | **First Sentence:  Immaterial,  Unsupported.**  Defendant contests Plaintiff's unsupported characterizations regarding what his former supervisors thought of his performance, but argues that they have no bearing on the non-selection claims in this case. As noted above, general averments of an employee's adequate performance are insufficient to create a genuine issue of fact as to an employer's motives.  <u>Jackson</u>, 2005 WL 3371041, at *12 n. 17.<br><br>**Second and Third Sentences:  Immaterial, Undisputed for purposes of this Motion.**  For sake of this motion, Defendant does not dispute the facts contained in these sentences, but argues that Plaintiff's prior evaluations have no bearing on the non-selection claims in this case.<br><br>**Fourth Sentence:  Immaterial, Unsupported.**  Defendant does not dispute that Plaintiff received a monetary award while at COPS, but objects to the remaining characterizations in the sentence.  Defendant's "previous success," to the extent it exists, is wholly irrelevant to Plaintiff's current non-selection claims.<br><br>**Fifth Sentence:  Immaterial, Unsupported.**  Defendant offers no evidence (other than his own deposition testimony) that would show whether in fact his processes have been adopted by others at COPS.  Regardless of the lack of evidence, such a statement is immaterial and has no bearing on the non-selection claim in this case. |
| 13. | **First Sentence:  Unsupported.**  As Plaintiff has failed to cite any record evidence, Plaintiff cannot create a material disputed fact.  *See Celotex Corp.* and *Frito-Lay*, *supra*. |

| | |
|---|---|
| 14. | **First Sentence:  Immaterial, Unsupported.**  Plaintiff's prior performance ratings are immaterial facts that have no bearing on his non-selection claim.  In addition, Plaintiff's failure to provide any specific page citations to any of the cited evidence makes it impossible for Defendant to verify the validity of the claim, and determine whether or not it would be disputed. |
| 15. | **First Sentence:  Immaterial, Unsupported.**  Defendant asserts that the existence of any opportunities to "restore" Plaintiff's duties or promote him to a GS-15 position [when he was initially transferred in 2002], are irrelevant and immaterial.  In addition, the cited deposition testimony does not support such a statement in any event. |
| 16. | **First Sentence:  Undisputed.** |
| 17. | **First Sentence:  Undisputed.**<br><br>**Second Sentence:  Conclusory statement.**  In addition, as Plaintiff has failed to cite any record evidence, Plaintiff cannot create a material disputed fact.  *See Celotex Corp.* and *Frito-Lay*, *supra*.<br><br>**Third Sentence:  Legal argument, Mischaracterized.**  In addition, as Plaintiff has failed to cite any record evidence, Plaintiff cannot create a material disputed fact.  *See Celotex Corp.* and *Frito-Lay*, *supra*.<br><br>**Fourth Sentence:  Undisputed.** |
| 18. | **First Sentence:  Immaterial, Mischaracterized, But Defendant Does Not Dispute the Underlying Facts for Purposes of this Motion.**  For purposes of this Motion, only, Defendant does not contest that Dr. Scheider may have spent more cumulative days serving in the acting SSSA role.  The rest of the characterizations in this paragraph are speculative, and unsupported. |
| 19. | **First Sentence:  Conclusory statement.**  In addition, as Plaintiff has failed to cite any record evidence, Plaintiff cannot create a material disputed fact.  *See Celotex Corp.* and *Frito-Lay*, *supra*. |
| | |

| 20. | **First Sentence: Immaterial, Unsupported.** Plaintiff's citation to Smith's deposition does not support his assertion. Moreover, Smith's statements are immaterial, irrelevant, hearsay, lack personal knowledge, and lack proper foundation as she testified that she: (1) was not involved in the decision to hire Plaintiff and does not know who was; (2) does not make any decisions regarding Plaintiff's employment; (3) does not make any decisions regarding Plaintiff's job responsibilities; and (4) was not involved in the decision-making process for the SSSA vacancy and has not discussed the non-selection reasons with anyone. Exhibit 30, AS Dep. 120:10-122:25 |
| --- | --- |
| 21. | **First Sentence: Legal argument.** In addition, as Plaintiff has failed to cite any record evidence, Plaintiff cannot create a material disputed fact. *See Celotex Corp.* and *Frito-Lay*, *supra*. |
| 22. | **First Sentence: Undisputed.**<br><br>**Second Sentence: Legal argument.** Defendant does not dispute that the Position Description allocates 45% of the criteria to "Exercises Supervisory and/or Managerial Authority," and does not dispute that Pam Cammarata selected Dr. Scheider. |
| 23. | **First Sentence: Legal argument.** In addition, as Plaintiff has failed to cite any record evidence, Plaintiff cannot create a material disputed fact. *See Celotex Corp.* and *Frito-Lay*, *supra*. |
| 24. | **First Sentence: Immaterial, Mischaracterized, and Hearsay.** Plaintiff objects to paragraph 24 as immaterial, mischaracterized, and lacking proper foundation. In the first instance, Tracy Henke's alleged acts in an unrelated event regarding what information should be included in a press release, have no bearing on her conduct or decisions in this case. More importantly, Plaintiff takes great liberties in citing the attached articles. Indeed, none of these articles show a "record of racial bias." Finally, the sources cited by Plaintiff are hardly definitive. For these reasons, the Court should disregard the statements made in paragraph 24. |
|  |  |

Dated: March 7, 2008                    Respectfully submitted,

                                             /s/
                                        _____
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney


                                             /s/
                                        _____
                                        RUDOLPH CONTRERAS, D.C. BAR # 434122
                                        Assistant United States Attorney

                                             /s/
                                        _____

                                        Mercedeh Momeni
                                        Assistant United States Attorney
                                        555 Fourth Street, N.W.
                                        Civil Division
                                        Washington, D.C.  20530
                                        (202) 305-4851

*Of Counsel:*

Kathleen Teal
Associate General Counsel

and

Jenny C. Wu
Associate General Counsel
Office of Community Oriented Policing Services
U.S. Department of Justice
Washington, D.C.  20530

## *Exhibit 29 - Defendant's Comparative Chart*

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶1.  Plaintiff is an African American male currently employed as a GS-301-14 Senior Policy Analyst in DOJ's Office of Community Oriented Policing Services ("COPS").  Compl. ¶¶ 8, 52.  Plaintiff has worked within DOJ since approximately 1981.  Compl. ¶ 6. | ¶1.  Undisputed that Plaintiff joined DOJ in 1981.<br><br>No response in PSMF to the remaining statements. | Undisputed. |
| ¶2.  While employed at DOJ's Office of Justice Programs, ("OJP") and on or about June - July 2001, Plaintiff was interviewed regarding the EEO complaints of two other employees. Compl. ¶¶ 9-10. | No response in PSMF. | Undisputed. |
| ¶3.  In September 2002, Plaintiff was transferred from OJP to COPS into a GS-14 Senior Policy Analyst position.  Compl. ¶¶ 8, 15.  On or about May 25, 2004, Plaintiff first contacted an EEO counselor and alleged that his transfer to COPS was retaliatory.  Exhibit 1, ROI, Tab B-1. | ¶2.  Undisputed that Plaintiff was transferred from OJP to COPS in September 2002, and he contacted an EEO counselor in May 2004.<br><br>No response in PSMF to the remaining statements. | Undisputed. |
| ¶4.  In 2003, Plaintiff applied and interviewed for the position of Supervisory Program Audit Officer ( GS-301-15).  Compl. ¶¶ 42, 44.  The selection process for this position took place in 2003 and Plaintiff was not selected for the position.  Compl. ¶ 44. | No response in PSMF. | Undisputed. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶5.  In January 2004, COPS issued vacancy announcement COPS-04-086(DH) for a GS-14 Supervisory Social Science Analyst ("SSSA") in the Program/Policy Support and Evaluation Division ("PPSE").  For the SSSA position, applications were submitted to the AVUE Digital Services ("AVUE"), which scored and ranked the applicants with the ultimate selectee, Dr. Matthew Scheider, receiving a higher score than the Plaintiff.  Exhibit 2, KSA/Competency Rating; Exhibit 3, Brown Decl. ¶ 2.  AVUE deemed both the selectee and the Plaintiff as being minimally qualified for the SSSA vacancy and listed them on the noncompetitive and merit promotion lists as being eligible candidates. Exhibit 4, ROI, Tab E-16; Exhibit 3, Brown Decl. ¶ 2. | ¶3.  Undisputed that Plaintiff applied for the GS-14 Supervisory Social Science Analyst position.<br><br>No response in PSMF to the remaining statements. | Undisputed. |
| ¶6.  Three candidates were interviewed for the SSSA position by a three member panel consisting of Pamela Cammarata, Beverly Alford, and Jamie French.  Exhibit 5, ROI, Tab D-9, at 26-27. | No response in PSMF. | Undisputed. |

2

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶7. According to the Position Description ("PD") attached to the Vacancy Announcement, the duties of the position included, but were not limited to, responsibility for:<br>•"leading support for designing, implementing, monitoring and assessing national level programs to . . . implement community policing. . . .[and] perform[ing] a variety of senior level management, analytical, administrative, evaluative and other professional work in a combination of social and/or behavioral sciences contributing to the Office's mission through program and policy support and evaluation[,]" and<br>• "lead[ing] senior level policy analysis activities . . ., direct[ing] and oversee[ing] internal assessments and external efforts, including senior level liaison with the COPS Office Director and other organizations engaging in policy work, research or evaluation in support of the COPS Office . . . ensur[ing] policy and evaluation activities are completed efficiently and effectively . . . ." Exhibit 6, ROI, Tab E-14. | No response in PSMF, but Plaintiff acknowledges in PSMF ¶¶ 5-6 that the PD is ROI, Tab E-14. | Undisputed. |
| ¶8.  The required Knowledge, Skills, and Attributes ("KSAs") included the ability to communicate effectively in performing supervisory or leader work, the ability to supervise, and the ability to analyze organizational and operational problems and develop solutions.  Exhibit 6, ROI, Tab E-14. | ¶ 5.  Undisputed. | Undisputed. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶9. The requisite knowledge for the SSSA position, included, but was not limited to:<br>•"[p]rofessional mastery of public administration, behavioral and social sciences, including superior knowledge and skills in applying social scientific concepts and methods to studying problems of crime and criminal justice and a demonstrated ability to design and carry to completion research projects of substantial complexity[;]"<br>•"professional mastery of advanced research design and experimental methods[;]"<br>•"professional mastery of advanced qualitative and quantitative systems, behavior concepts and analysis methods[;]"<br>•"professional knowledge of new developments in the social and behavioral sciences as they pertain to the field of criminal justice. . . ."<br>Exhibit 6, ROI, Tab E-14. | No response in PSMF, but Plaintiff acknowledges in PSMF ¶¶ 5-6 that the PD (which contains the KSAs) is ROI, Tab E-14. | Undisputed. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶10. Cammarata made the final selection decision. Exhibit 7, PC Dep. 157:7-17; Exhibit 10, JF Dep. 96:2-9, 101:10-102:1, 103:14-22; Exhibit 9, BA Dep. 80:6-17.  Cammarata took into consideration the application and any attached materials, the interview, and her knowledge of each candidate's performance. Exhibit 7, PC Dep. 194:13-195:3. | ¶16.  Undisputed that Cammarata made the final selection decision.<br><br>¶17.  Plaintiff also concedes that Cammarata "alleges in making her decision she considered the respective candidate's applications, attached materials, interview, and her knowledge of each candidate's performance." Plaintiff, however, claims without any citation to the record, that "her failure to consider the respective candidate's qualifications belie her assertion." | Plaintiff cites to no record evidence to support his conclusory claim that Cammarata "fail[ed] to consider the respective candidate's qualifications."  His unfounded opinion does not create a disputed issue of fact. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶11. As set forth in the interview questions and discussed with the panelists, Cammarata sought a candidate who would be "a hands on, multitasking supervisor, who takes on work himself/herself, is very organized, efficient, meets deadlines, very independent thinker, who needs little guidance, is competent and confident, is credible in the research and evaluation field and among academics, can defend methodologies used by OIG [Office of the Inspector General], GAO [Government Accounting Office], NIJ [National Institute of Justice], etc.  Gets along well with others, is politically astute, keeps abreast of research and evaluation studies in the field, provides direction regarding future research, policy support and evaluation activities."  Exhibit 8, ROI, Tab E-17; Exhibit 7, PC Dep. 167:22-168:5; Exhibit 9, BA Dep. 40:20-25, 63:21-64:13; Exhibit 10, JF Dep. 81:17-82:8. | ¶17.Undisputed that "Cammarata states that she sought a candidate who would be 'a hands-on, multitasking supervisor, who takes on work himself/herself, is very organized, efficient, meets deadlines, very independent thinker, who needs little guidance, is competent and confident . . . (and) is politically astute . . . '"<br><br>No response in PSMF to the remaining statements. | Undisputed. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶12. Cammarata's focus on the research and evaluation criteria were based, in part, on her desire to address two concerns. First, she wanted to "make a distinction between what PPSE was doing and what Training and [Technical Assistance Division] was doing" so "[she] was putting more of a focus in [filling the 2004 vacancy] on the research and the evaluation and the statistical experience and knowledge that the division holds. . . ." PC Dep. 169:15-170:4. "At the same time, there was concern about the COPS Office and the studies on COPS impact on crime. And [COPS] was being criticized for [its] evaluation studies and some of the research we were doing, and [she] wanted to bring that credibility back to the division" by, in part, hiring a supervisor who had the technical knowledge, experience, and credibility in the field to implement such change. Exhibit 7, PC Dep. 171:22-172:1. | ¶21. Plaintiff claims, without any citation to the record, that Cammarata's "'focus on the research and evaluation criteria' is contradicted by the listed essential elements of the position description, the weight accorded to those elements, as well as Mr. Scheider's own description of what the job entailed." <br><br> No response in the PSMF to the remaining statements. | Plaintiff's claim is conclusory and cites to no record evidence. His unfounded opinion does not create a disputed issue of fact. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶15. The selectee had experience and an educational background in the areas of advanced research design and experimental methods, and advanced analytical, statistical and evaluation work including: holding a Ph.D. in Sociology with an emphasis in crime/deviance and social stratification; conducting original social science research that involves complex statistical analyses including LOGIT and OLS regression; having a number of peer-reviewed publications in academic journals and serving as the Assistant Editor for the journal of Deviant Behavior, a professional reviewer for Police Quarterly and Police Practice and Research, Assistant to the Editor for the official journal of the American Society of Criminology; and working as a Social Science Analyst in PPSE for the past five years, which entailed: performing analyses that have had direct policy implications for COPS Office program and activities, such as conducting the recertification of the COPS MORE Grant program for the Attorney General to present to Congress, and developing and planning an evaluation of the COPS Office that resulted in a report to the Senate Judiciary Committee that the COPS Office had a significant effect on reducing crime; and managing a number of COPS Office innovative grants and cooperative agreements. Exhibit 13, ROI, Tab E-17; Exhibit 14, E-18;Exhibit 15, MS Dep. 26:3-7, 56:18-20, 10:22-13:10, 14:19-15:1, 16:11-18:8, 20:5-13, 25:15-23, 38:22-40:23, 42:17-45:4. | No response in PSMF. | Undisputed. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶16. The selectee's application detailed his leadership roles at COPS, such as: leading the multi-divisional team for the Hot Spots program, the team that conducted the successful MORE recertification, and the team that developed an options and process memo to merge COPS Count and Progress Reports;leading the time-sensitive development of the PPSE Open Solicitation; serving as the Acting Assistant Director ("AD") and Supervisory Social Science Analyst ("SSSA") for two three-week periods; serving as grant manager for a large number of cooperative agreements which require supervisory skills; and supervising an intern; Exhibit 14, ROI, Tab E-18. | ¶18.  Plaintiff contends that "Defendant allowed Matthew Scheider to non-competitively enhance his qualifications by acting as GS-14 Supervisory Social Science Analyst, while denying the Plaintiff an equal opportunity to demonstrate his skills, knowledge and abilities."<br><br>No response in PSMF to the remaining statements. | PSMF ¶18.  Plaintiff's contention is not a material fact in that it does not "affect the outcome of the case under governing law." Nails v. England, 311 F. Supp.2d 116, 121 (D.D.C. 2004). |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶17. Cammarata also believed that selectee was credible in the field of academia.  Exhibit 5, ROI, Tab D-9, at 28; Exhibit 13, E-17; see also Exhibit 10, JF Dep.102:7-14, 102:21-104:13; Exhibit 9, BA Dep.73:18-74:3. | No response in PSMF. | Undisputed. |
| ¶18. Moreover, Cammarata and the panelists believed that the selectee had been well prepared for the interview, bringing with him numerous examples of his substantive work. Exhibit 5, ROI, Tab D-9, at 29; Exhibit 13, E-17; Exhibit 9, BA Dep.67:6-18, 74:4-75:15. | No response in PSMF. | Undisputed. |
| ¶19. From serving as his supervisor for five years, Cammarata knew that selectee was extremely organized, very concise, and an independent thinker who needed little guidance. He also addressed issues immediately, met deadlines, and had strong multi-tasking and leadership skills. Exhibit 5, ROI, Tab D-9; Exhibit 13, E-17; Exhibit 7, PC Dep. 210:1-3. | No response in PSMF. | Undisputed. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶20. While Cammarata believed that Plaintiff met some of the criteria, overall she determined that Plaintiff lacked the experience and expertise in advanced research design and experimental methods, and advanced analytical, statistical and evaluation work that selectee had.  Exhibit 7, PC Dep. 206:8-10; Exhibit 5, ROI, Tab D-9 at 27, 28-29; Exhibit 13, E-17.  Cammarata also took into account observations about his performance she had formed from working with him.  Exhibit 5, ROI, Tab D-9, at 29; Exhibit 13, E-17; Exhibit 7, PC Dep.184:2-9.  Among other things, she felt he was not organized, not brief in discussions, and was not an independent thinker or doer.  Cammarata felt he was unable to independently and proactively handle large-scale tasks and lead teams, and Cammarata questioned his ability to delegate work among his Police Integrity team.  Exhibit 5, ROI, Tab D-9, at 29-30.  Her overall concern was the detailed guidance that Plaintiff required before moving forward on complex tasks.  Exhibit 5, ROI, Tab D-9, at 30. | ¶9.  Plaintiff contends that "[t]here is no record of disappointment in the Plaintiff's job performance."  ¶12.  Plaintiff contends his performance evaluations from his positions prior to joining COPS demonstrate that his former supervisors found him to be an organized independent thinker and doer.  ¶20. Plaintiff contends Angel Smith's deposition contradicts Cammarata's statements that she fairly considered Plaintiff for advancement opportunities and assignments. | PSMF ¶9.  Plaintiff's citation to Cammarata's deposition does not support his assertion, but addresses whether Plaintiff had a performance appraisal attached to his application.  Plaintiff's claim is also contradicted by his own testimony about several emails documenting performance issues. Exhibit 16, AP Dep. 214:11-220:25, 219:22-220:25, 242:9-244:24; Exhibit 5, ROI, Tab D-9, at 29-30; Exhibit 17. Therefore, there is no genuine dispute.  PSMF ¶12. Plaintiff's prior performance evaluations for other positions are immaterial in that they do not "affect the outcome of the case under governing law." Nails v. England, 311 F. Supp.2d 116, 121 (D.D.C. 2004); see also Reply at 18-20. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| | | PSMF ¶20. Plaintiff's citation to Smith's deposition does not support his assertion. Moreover, Smith's statements are immaterial, irrelevant, hearsay, lacks personal knowledge, and lacks foundation as she testified that she: (1) was not involved in the decision to hire Plaintiff and does not know who was; (2) does not make any decisions regarding Plaintiff's employment; (3) does not make any decisions regarding Plaintiff's job responsibilities; and (4) was not involved in the decision-making process for the SSSA vacancy and has not discussed the non-selection reasons with anyone. Exhibit 30, AS Dep. 120:10-122:25 |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶21. From September 23, 2002 - April 19, 2004, Cammarata served as Plaintiff's first or second level supervisor, and therefore, had first-hand knowledge of his performance. Exhibit 5, ROI, Tab D-9 at 2; Exhibit 7, PC Dep.184:2-9.  Examples of Plaintiff's performance include, that Cammarata and others, brought to Plaintiff's attention complaints that grantees were leaving him voice mail messages, but not getting any response.  Exhibit 16, AP Dep. 242:9-13, 242:21-23, 243:5-20; Exhibit 5, ROI, Tab D-9, at 30.  Plaintiff also failed to hold any team meetings or to have much communication with team members for the first seven months after he was assigned responsibility for serving as Police Integrity team's leader.  Exhibit 16, AP Dep.214:11-220:25; Exhibit 17, 2/26/04 email chain between Cammarata and Pearsall. Exhibit 5, ROI, Tab D-9, at 29-30. Additionally, Plaintiff at times would state how overloaded he was and not complete his assigned projects, yet he continued to volunteer to take on new projects.  Exhibit 5, ROI, Tab D-9 at 30. | ¶ 9.  Plaintiff contends that "[t]here is no record of disappointment in the Plaintiff's job performance." | PSMF ¶9.  Plaintiff's citation to Cammarata's deposition does not support his assertion, but instead, addresses whether Plaintiff had a performance appraisal attached to his application for the SSSA vacancy.  Plaintiff testified in his deposition about several emails documenting performance issues. Exhibit 16, AP Dep. 214:11-220:25, 219:22-220:25, 242:9-244:24; Exhibit 5, ROI, Tab D-9, at 29-30; Exhibit 17, 2/26/04 email chain between Cammarata and Pearsall.  Therefore, there is no genuine dispute. |
| ¶22. As his supervisor, Cammarata assigned Plaintiff to be in charge of significant projects, including Presidential Initiatives and the Police Integrity Team, and asked him to work on the strategic plans of the three divisions she supervised, as well as attend strategic planning and budget meetings.  AP Dep. 70:11-14, 72:8-73:10, 115:17-116:23, 117:5-118:4, 118:119:4, 176:5-20, 203:12-21, 204:5-23, 214:4-10. | ¶18.  Plaintiff contends that "Defendant allowed Matthew Scheider to non-competitively enhance his qualifications by acting as GS-14 Supervisory Social Science Analyst, while denying the Plaintiff an equal opportunity to demonstrate his skills, knowledge and abilities." | See Status of Fact ¶16. |

| Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("DSMF") | Plaintiff's Statement of Material Facts of Genuine Dispute, Omissions from Defendant's Motion for Dismissal and/or for Summary Judgment ("PSMF") | Status of Fact |
|---|---|---|
| ¶23.  On or about May 25, 2004, Plaintiff contacted an EEO counselor regarding his claims of discrimination and reprisal.  Exhibit 1, ROI, Tab B. | ¶ 2.  Undisputed that Plaintiff contacted an EEO counselor in May 2004. | |

# TRANSCRIPT OF PROCEEDINGS

| | | |
|---|---|---|
| ALBERT PEARSALL, III, | ) | |
| | ) | |
| Complainant, | ) | |
| | ) | |
| v. | ) | No. 570-2006-00015X |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, | ) | |
| | ) | |
| Respondent. | ) | |

Deposition of:  Angel Z. Smith

Pages:  1 through 162

Place:  Washington, D.C.

Date:  July 7, 2006

## HERITAGE REPORTING CORPORATION

*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C.  20005-4018
(202) 628-4888
hrc@concentric.net

ORIGINAL

GOVERNMENT
EXHIBIT
30

1

UNITED STATES DEPARTMENT OF JUSTICE

ALBERT PEARSALL, III,          )
                               )
          Complainant,         )
                               )
v.                             )   No. 570-2006-00015X
                               )
UNITED STATES DEPARTMENT       )
OF JUSTICE,                    )
                               )
          Respondent.          )

Deposition of:

ANGEL Z. SMITH

a witness of lawful age, taken on behalf of the

Respondent, pursuant to notice, in the Ninth Floor

Conference Room, U.S. Department of Justice, 1100 Vermont

Avenue, N.W., Washington, D.C., on Friday, July 7, 2006,

at 8:34 a.m., before Bernadette Herboso, Notary Public in

and for the District of Columbia, when were present:

          APPEARANCES:

          On behalf of Complainant:

          DENIS M. DELJA, Esquire
          Arnold & Porter, LLP
          555 12th Street, N.W.
          Washington, D.C.  20004
          (202) 942-5455

          On behalf of Respondent:

          JENNY C. WU, Esquire
          JOYNA WAGNER, Esquire
          U.S. Department of Justice
          1100 Vermont Avenue, N.W.
          Washington, D.C.  20005
          (202) 514-9424

          Heritage Reporting Corporation
                (202) 628-4888

120

1    hate your job, right?

2         A    I didn't say I hate my job.

3         Q    What did you say then again?  I'm sorry.

4         A    I don't like my job.

5         Q    I don't like my job.  Okay.  And who do you

6    blame that on that you don't like your job?

7         A    My supervisors.

8         Q    So that would include who?

9         A    Pam and Matthew.

10        Q    You weren't involved in the decision to hire

11   Mr. Pearsall, were you?

12        A    No.

13        Q    Do you know who was?

14        A    No.

15        Q    You don't make any decisions regarding Mr.

16   Pearsall's employment, do you?

17        A    No.

18        Q    Do you know who does?

19        A    No.

20        Q    What about decisions regarding Mr.

21   Pearsall's responsibilities?  Do you make those

22   decisions?

23        A    No.

24        Q    Do you know who does?

25        A    That would be Matthew and Pam.

Heritage Reporting Corporation
(202) 628-4888

121

1      Q   So your understanding as to Mr. Pearsall's

2  responsibilities, what is that based on?

3      A   His performance work plan.

4      Q   Okay.  So, looking at his performance work

5  plan, that's where you can get an understanding as to

6  what his duties are?

7      A   Yes.

8      Q   And you believe that's an accurate

9  reflection of his responsibilities?

10     A   Yes.

11     Q   When Mr. Pearsall was hired, you didn't make

12  the decision requiring what his responsibilities would

13  be, did you?

14     A   No.

15     Q   And are you aware of Mr. Pearsall's job

16  history prior to COPS?

17     A   No.

18     Q   Do you know what Mr. Pearsall's experience

19  has been in the field of law enforcement?

20     A   No.

21     Q   Do you know what Mr. Pearsall's knowledge is

22  of law enforcement?

23     A   Not specifically, no.  I know that he has

24  knowledge of law enforcement, but as to what areas,

25  no, I don't.

122

1      Q    And what is that based on?  How do you know

2    he has knowledge of law enforcement?

3      A    Because he discussed it in prior staff

4    meetings where he gives background information on what

5    he has done.

6      Q    So your understanding is based on what he

7    has said, is that right?

8      A    Yes.

9      Q    What about his experience in the field of

10    grant management?  Okay.  I think earlier you had

11    testified that you do know what his experience has

12    been in the field of grant management, is that right?

13      A    That he has managed grants, yes, and managed

14    staff who was in the same division as he was.

15      Q    Okay.  And that's again based on what he's

16    told you, right?

17      A    Yes.

18      Q    You haven't had any discussions with anybody

19    about the reasons why Mr. Pearsall was not selected

20    for the GS-14 supervisory social science analyst, have

21    you?

22      A    No.

23      Q    And you weren't involved in that decision-

24    making process?

25      A    No.