UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ALBERT A. PEARSALL,                       )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )        Civil Action No. 07-0108 (PLF)
                                          )
ERIC H. HOLDER, JR., Attorney General,    )
United States Department of Justice,[1]   )
                                          )
        Defendant.                        )
_____)


OPINION

        This is an employment discrimination case brought under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA").  Plaintiff

Albert Pearsall brings suit against his long-time employer, the United States Department of

Justice ("DOJ"), alleging retaliation and discrimination on the basis of race, gender and age in

violation of Title VII and the ADEA.  DOJ has moved to dismiss Mr. Pearsall's claims pursuant

to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2]  On September

_____

    [1]      The complaint named Alberto Gonzales, former Attorney General, as the party
defendant.  The Court previously substituted Michael Mukasey, Mr. Gonzales' successor,
pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  The Court now substitutes Eric
H. Holder, Jr., Mr. Mukasey's successor, pursuant to the same Rule.

    [2]      The papers submitted in connection with this matter include: Defendant's Motion
to Dismiss Or, In the Alternative, for Summary Judgment ("Mot."); plaintiff's opposition thereto
("Opp."); and defendant's reply in support of its motion ("Reply").

29, 2008, the Court issued an Order and Judgment (1) granting DOJ's motion in its entirety, (2) dismissing with prejudice all of Mr. Pearsall's claims except Count Two, and (3) entering judgment in DOJ's favor on Count Two.  See Pearsall v. Mukasey, Civil Action No. 07-0108, Order and Judgment (D.D.C. Sept. 29, 2008).  This Opinion explains the reasoning behind that Order and Judgment.

## I.  BACKGROUND

Mr. Pearsall, an African American male over the age of 40, has worked at DOJ since 1981.  He had supervisory responsibilities for many of those years.  In September 2002, Mr. Pearsall was involuntarily transferred from a supervisory position in DOJ's Office of Justice Programs ("OJP") to a non-supervisory position in DOJ's Office of Community Oriented Policing Services ("COPS").  According to Mr. Pearsall, after he was transferred to COPS he was subjected to several unsatisfactory personnel decisions (including the assignment of work incommensurate with his skills and experience, denial of training opportunities, and denial of travel opportunities) and undesirable working conditions (including substandard office space), all of which amounted to a "functional demotion."  Mot., Ex. 18, Transcript of Interview of Albert Pearsall by EEO Investigating Officer Elbert Bishop at 41 (Jan. 31, 2005) ("Tr.").

In addition, Mr. Pearsall was not selected for several supervisory positions for which he applied after he was transferred to COPS.  One supervisory position for which Mr. Pearsall applied was the Supervisory Social Science Analyst ("SSSA") position within COPS. The position was posted in January 2004.  Three candidates, all of whom were deemed qualified, were interviewed for this position: Mr. Pearsall, another COPS employee named Dr. Matthew

Scheider (a white male under the age of 40), and a white female.  Dr. Scheider received a higher

pre-interview score than Mr. Pearsall from the third-party contractor hired to pre-screen

applicants.  The three-member interview panel included Mr. Pearsall's first-line supervisor,

Pamela Cammarata (a white female over the age of 40), COPS Assistant Director Beverly Alford

(an African American female over the age of 40), and COPS Senior Supervisory Policy Analyst

Jamie French (a white female under the age of 40).  Dr. Scheider was offered the SSSA position

in April 2004.  Ms. Cammarata made the final selection decision.

According to DOJ, neither race, sex nor age played any role in Ms. Cammarata's

final selection decision; rather, that decision was based entirely on the relative merits of the three

candidates (as demonstrated by their application materials, interviews and prior performance).  In

particular, DOJ asserts that Ms. Cammarata was swayed by Dr. Scheider's high-level research

and analysis skills – skills that Mr. Pearsall admittedly lacks.[3]  Mr. Pearsall contends that DOJ's

asserted non-discriminatory reasons for not selecting him are, like the selection process itself,

"simply a ruse . . . and window dressing" designed to cover up DOJ's discriminatory and

retaliatory motives.  Compl. ¶ 36.

Mr. Pearsall contacted an Equal Employment Opportunity counselor to complain

about these and related events on May 25, 2004.  He filed a formal administrative charge on

October 6, 2004.  Ultimately, the following claims were accepted for investigation:

---

[3]       According to DOJ, Dr. Scheider "had experience and an educational background
in the areas of advanced research design and experimental methods [including a Ph.D. in
Sociology with an emphasis in crime/deviance and social stratification], and [had produced]
advanced analytical, statistical and evaluation work[.]"  Mot. at 5.

> [1. Mr. Pearsall was] involuntarily transferred from OJP to COPS in September of 2002 which he alleges is due to reprisal (EEO activity);[4]
>
> [2. Mr. Pearsall was, for discriminatory reasons,] denied the position of Supervisory Program Audit Officer in the COPS office in late 2003;
>
> [3. Mr. Pearsall was, for discriminatory and retaliatory reasons,] denied the position of Supervisory Social Science Analyst on April 19, 2004; [and]
>
> [4. Mr. Pearsall was, for retaliatory reasons,] assigned to a substandard working area in the COPS office once he was transferred there.

Mot., Ex. 23, Letter Re: Acceptance Notice of Complaint of Discrimination of Albert A. Pearsall, III, Docket Number B-05-2511 at 1 (stamped Dec. 9, 2004).  Mr. Pearsall, through counsel, later clarified that the fourth claim was actually encompassed by the first claim, and that the substandard office space was not the only unsatisfactory working condition at issue.  Specifically, Mr. Pearsall made clear that his first claim should be understood as a claim that (1) he was transferred to COPS for retaliatory reasons; (2) the transfer subjected him to various indignities (including but not limited to substandard office space) constituting a "functional demotion"; and (3) the transfer and the functional demotion it occasioned adversely affected his career.  Mot., Ex. 24, Letter from Counsel for Albert Pearsall to Marcus Williams, DOJ Complaints Manager (Dec. 22, 2004) ("Reply Letter").  Notably, Mr. Pearsall later withdrew the first claim.  See Mot.

---

[4]      Mr. Pearsall claims that he engaged in two forms of protected activity.  First, in the summer of 2001, he participated in interviews regarding the EEO complaints of two other DOJ employees.  See Compl. ¶ 10.  Second, he participated in Blacks in Government ("BIG") – a group dedicated to opposing racial discrimination and promoting equality in employment – beginning in 1998.  See id. ¶ 9.  Mr. Pearsall offers no specific description of when or in what way he participated in BIG after 1998.

at 17 ("In response to Defendant's motion before the Administrative Judge to dismiss [the retaliatory transfer] claim on timeliness grounds, Plaintiff stipulated to the dismissal [and the administrative law judge dismissed it on June 15, 2006].").  The administrative law judge granted summary judgment in DOJ's favor on Mr. Pearsall's other claims.  See Mot. at 7 n.3.  On January 17, 2007, Mr. Pearsall filed an eight-count complaint in this Court.

## II.  STANDARDS

### A.  Motions to Dismiss Pursuant to Rule 12(b)(1)

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dispose of the motion on the basis of the complaint alone or it may consider materials beyond the pleadings.  "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).  This Court has interpreted Herbert to allow a court to "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  Scolaro v. D.C. Board of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

### B.  Motions to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under

Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly,  550 U.S. at 556, but "something beyond . . . mere possibility . . . must be alleged[.]" Id. at 557-58. The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 555, or must be sufficient "to state a claim for relief that is plausible on its face." Id. at 570. The Court referred to this newly-clarified standard as "the plausibility standard." Id. at 560 (abandoning the "no set of facts" language from Conley v. Gibson). The D.C. Circuit has noted that Twombly "leaves the long-standing fundamentals of notice pleading intact." Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d at 15.

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all of the factual allegations contained in the complaint. See Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Communications Corp., 16 F.3d at 1276. Nevertheless, the Court need not accept

inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions.  See Kowal v. MCI Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

### C.  Motions for Summary Judgment Pursuant to Rule 56

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the

Court must "eschew making credibility determinations or weighing the evidence."  <u>Czekalski v.</u> <u>Peters</u>, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  He is required to provide evidence that would permit a reasonable jury to find in his favor.  <u>Laningham v. United</u> <u>States Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. at 249-50; <u>see</u> <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting <u>Matsushita Electric Industrial Co. v.</u> <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims."  <u>Freedman v. MCI</u> <u>Telecommunications Corp.</u>, 255 F.3d 840, 845 (D.C. Cir. 2001).

## III.  GOVERNING LAW

### A.  *Title VII*

Title VII provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16.

Title VII also makes it unlawful for an employer to retaliate against an employee for engaging in protected activity such as filing a charge of discrimination.  <u>See</u> 42 U.S.C. § 2000e-3(a).

Federal employees must exhaust their administrative remedies before filing suit under Title VII.  <u>See</u> 42 U.S.C. § 2000e-16(c); <u>Bowden v. United States</u>, 106 F.3d 433, 437 (D.C. Cir. 1997).  Employees who allege discrimination must consult with an agency EEO counselor before filing a written complaint with the agency accused of discriminatory practices.  <u>See</u> 29 C.F.R. § 1614.105(a); 29 C.F.R. § 1614.106(a)-(c).  A complainant "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge.  <u>See</u> 29 C.F.R. § 1614.106(e)(2); 29 C.F.R. § 1614.108(f).  A complainant may file a civil action after receiving a final decision from the agency or after a complaint has been pending for at least 180 days.  <u>See</u> 29 C.F.R. § 1614.407.  "Complainants must timely exhaust these administrative remedies before bringing their claims to court."  <u>Bowden v. United States</u>, 106 F.3d at 437.  The exhaustion of administrative remedies is not a jurisdictional requirement of the statute.  The failure to exhaust, rather, is an affirmative defense that must be raised by the defendant (as it has been in this case).  <u>See</u> <u>Howard v. Gutierrez</u>, Civil Action No. 08-0421, 2009 WL 536585, at *2 (D.D.C. Mar. 3, 2009); <u>Walker v. Paulson</u>, Civil Action No. 06-1115, 2007 WL 1655879, at *2 (D.D.C. June 7, 2007).

*B.  The ADEA*

The ADEA provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a). "The ADEA . . . provides a federal government employee two alternative avenues to judicial redress."  Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003), *cert. denied*, 543 U.S. 809 (2004). First, pursuant to 29 U.S.C. §§ 633a(c) and 633a(d), an employee may bring his claim directly to federal court "so long as, within 180 days of the allegedly discriminatory act, he provides the [Equal Employment Opportunity Commission] with notice of his intent to sue at least 30 days before commencing suit."  Id.  Second, pursuant to 29 U.S.C. §§ 633a(b) and 633a(c), an employee may choose to pursue his claims administratively in the first instance and then file suit in federal court if he is dissatisfied with the results of the administrative process.  See id.; see also Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991).  Employees who choose the latter route must "consult [an EEO] Counselor prior to filing a [formal administrative] complaint in order to try to informally resolve the matter."  29 C.F.R. § 1614.105(a).  As with claims under Title VII, this initial contact must be made "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).

## IV.  DISCUSSION

### *A.  Voluntarily Dismissed Claims*

In his opposition to DOJ's dispositive motion, Mr. Pearsall voluntarily dismisses

four counts: Count Three (a Title VII claim based on Mr. Pearsall's belief that DOJ's failure to

select him for a Supervisory Program Audit Officer position in 2003 was discriminatory); Count

Four (a "combination discrimination" claim based on Mr. Pearsall's belief that he was not

selected for the Supervisory Program Audit Officer position or the 2004 Supervisory Social

Science Analyst ("SSSA") position because DOJ discriminates against "African American men

over 40," Compl. ¶ 49); Count Seven (alleging that DOJ retaliated against Mr. Pearsall by

"engag[ing] in publishing and proliferating defamatory libelous acts for the purpose[] of

destroying [his] business and employment reputation," Compl. ¶ 61); and a claim under

42 U.S.C. § 1983 (asserting that DOJ deprived Mr. Pearsall of his civil rights by circulating false

information about his suitability as an employee).  See Opp. at 14.  Apparently, Mr. Pearsall

seeks dismissal *without* prejudice of some or all of these counts so that he can renew them after

he "has had adequate time for discovery."  Opp. at 3.  The Court concludes, however, that all

four voluntarily dismissed counts should be dismissed *with* prejudice.

To begin with, Mr. Pearsall fails to explain – in a Rule 56(f) affidavit or otherwise

– what additional discovery he requires or how further discovery would substantiate these claims.

See Hunter v. Rice, 531 F. Supp. 2d 185, 189-90 (D.D.C. 2008).  More importantly, no amount

of discovery could make these four counts viable.  DOJ argues, and Mr. Pearsall does not

dispute, that Count Three must be dismissed for failure to state a claim because it is time-barred.

See Mot. at 14 (arguing that (1) the selection process for the Supervisory Program Audit Officer

took place in 2003; (2) Mr. Pearsall failed to contact an EEO counselor with respect to his non-

selection for that position until May 25, 2004; and (3) therefore "Plaintiff failed to timely contact

an EEO counselor" with respect to Count Three).  DOJ argues, and Mr. Pearsall does not dispute,

that Count Four should be dismissed for failure to state a claim because there is no legal authority

for that count's "novel combination discrimination theory."  Mot. at 19 (citing Schatzman v.

County of Clermont, No. 99-4066, 2000 WL 1562819, at *9 (6th Cir. Oct. 11, 2000) (declining

to recognize a "'sex plus' discrimination" claim)).  DOJ argues, and Mr. Pearsall does not

dispute, that Count Seven should be dismissed for lack of subject matter jurisdiction because

(1) the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. ("FTCA"), is the only potentially

applicable waiver of sovereign immunity that would permit Mr. Pearsall to maintain such a

common law claim against the federal government; (2) Mr. Pearsall has not exhausted his

administrative remedies with respect to Count Seven; and (3) in any event the FTCA "prohibits

suits arising out of libel, slander or misrepresentation."  Mot. at 20 (citing 28 U.S.C. § 2680(h)).

Finally, DOJ argues, and Mr. Pearsall does not dispute, that Mr. Pearsall's Section 1983 claim

fails for several reasons – not the least of which is that DOJ "does not act under 'color of state

law' [as required by Section 1983] but rather, federal law."  Mot. at 21.[5]

---

[5]     Section 1983 provides, in pertinent part, that

> [e]very person who, *under color of any statute, ordinance,*
> *regulation, custom, or usage, of any State or Territory or the*
> *District of Columbia*, subjects . . . any citizen of the United States
> or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suity in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added).

Obviously, discovery would not cure these deficiencies.  Thus, Counts Three and Four of Mr. Pearsall's complaint and Mr. Pearsall's claim under Section 1983 must be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Count Seven must be dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B.  Contested Claims

#### 1.  Counts One, Five and Six (Transfer-Related Claims)

In Count One, Mr. Pearsall alleges that DOJ intentionally created a hostile work environment at COPS in order to retaliate against him for engaging in protected activity prior to the transfer.  See Compl. ¶¶ 23-29.  Count Six is also a retaliation-by-way-of-hostile work environment claim.  In Count Six, Mr. Pearsall alleges that DOJ retaliated against him for participating in Blacks in Government and other advocacy activities by creating a hostile work environment at COPS.  See id. ¶¶ 56-60.  In Count Five, Mr. Pearsall alleges that DOJ retaliated against him by transferring him to COPS and then "[s]urreptitiously using 'facially neutral' and discretionary personnel actions . . . to harm [Mr. Pearsall] in his employment and employment advancement opportunities." Compl. ¶¶ 55(a).  Count Five, in other words, restates the administrative charge that Mr. Pearsall withdrew as untimely in 2006.  See supra at 4-5.

Count Five must be dismissed for failure to state a claim because no element of this claim was both timely asserted and exhausted at the administrative level.  To the extent that this claim focuses on the 2002 transfer alone, it was not timely asserted.  Mr. Pearsall was transferred to COPS in September 2002 but he did not contact an EEO counselor to complain

13

about the transfer until May 25, 2004 – far more than 45 days later.[6]  To the extent that this claim

is intended to encompass the 2002 transfer *and* the unsatisfactory working conditions at COPS

(which may have continued until and after May 25, 2004), it was not exhausted.  As noted above,

Mr. Pearsall withdrew at the administrative level the claim that now appears as Count Five of his

complaint – that is, the claim that the 2002 transfer and the "functional demotion" it occasioned

harmed his career.  As a result, the allegations underlying Count Five were never exhausted at the

administrative level.  See Miller v. Smith, 584 F. Supp. 149, 153 (D.D.C. 1984) (administrative

claim submitted then withdrawn is not exhausted).[7]

Mr. Pearsall attempts to avoid dismissal of Count Five by arguing that DOJ had

sufficient notice of the claims underlying Count Five (because they were asserted at the

administrative level, even if later withdrawn), and that therefore the Court should deem those

claims exhausted.  See Opp. at 29.  The Court declines to do so.  One of the fundamental

---

[6]      Mr. Pearsall suggests that he did timely assert a retaliatory transfer claim at the administrative level because he contacted an EEO counselor within 45 days of *April 12, 2004* – the date he supposedly discovered that the 2002 transfer was retaliatory.  See Compl. ¶ 16.  In other words, Mr. Pearsall argues that he is entitled to equitable tolling of the time limits.  That argument fails because (1) the time limits for contacting an EEO counselor run from when a complainant suspects or should suspect a violation – not when a complainant obtains confirmation or evidence of a violation, see, e.g., Aceto v. England, 328 F. Supp. 2d 1, 7 (D.D.C. 2004) – and (2) according to Mr. Pearsall, "he suspected that he was the subject of retaliation as far back as June 2001." Mot. at 18.

[7]      Count Five must also be dismissed for an independent reason.  Plaintiffs claiming retaliation must present evidence that (1) they engaged in protected activity; (2) the employer took an adverse action against them; and (3) *the adverse action was causally related to the exercise of their rights.*  See von Muhlenbrock v. Billington, 579 F. Supp. 2d 39, 42 (D.D.C. 2008).  In the absence of any other evidence, the proximity of the protected activity and the adverse action may support an inference of causation.  Mr. Pearsall, however, presents no direct or indirect evidence of causation, and the year-plus length of time between the specific protected activity he identifies and his transfer to COPS is too great to support an inference of causation. See, e.g., Mayers v. Laborers' Health & Safety Fund, 478 F.3d 364, 369 (D.C. Cir. 2007).

purposes of any exhaustion requirement is to ensure that the agency has notice of a claim "and the opportunity to handle it internally." Velikonja v. Mueller, 315 F. Supp. 2d 66, 74 (D.D.C. 2004). By withdrawing the allegations underlying Count Five at the administrative level, Mr. Pearsall denied DOJ an opportunity to handle those allegations internally and "attempt an informal accommodation." Loe v. Heckler, 768 F.2d 409, 418 (D.C. Cir. 1985).

Counts One and Six – Mr. Pearsall's retaliation-by-way-of-hostile work environment claims – must be dismissed for two reasons. First, at the administrative level Mr. Pearsall failed to argue that DOJ retaliated against him by creating a hostile work environment. Admittedly, in his deposition testimony Mr. Pearsall did refer to the "negative working environment at COPS," Tr. at 40, and stated that as a result of his transfer to COPS his employment situation had become "very stressful and created considerable distress." Id. at 31. But neither he nor his counsel suggested that the "negative working environment at COPS" amounted to a hostile work environment. Not surprisingly, therefore, no hostile work environment claim was ever submitted or accepted for review at the administrative level.[8] Thus, Counts One and Six are beyond the scope of Mr. Pearsall's administrative charge. See Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) ("A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."); Silver v. Leavitt, Civil Action No. 05-0968, 2006 WL 626928, at *9 (D.D.C. March 13, 2006) (concluding that one of plaintiff's discrimination claims had not been exhausted because

---

[8]     Notably, Mr. Pearsall did not object to the the omission of a hostile work environment claim (or anything resembling a hostile work environment claim) when given the opportunity to respond to the agency's characterization of his claims. See Reply Letter at 1.

"[a]lthough the administrative record [did] contain some facts relating to" that claim, it had not

been accepted for investigation at the administrative level).[9]

> In any event, Counts One and Six must also be dismissed for failure to state a

claim under Rule 12(b)(6) because Mr. Pearsall's allegations about the "negative working

environment" he experienced, even if true, do not support a hostile work environment claim.[10]

> The workplace becomes "hostile" for purposes of a Title VII claim
> only when it is "permeated with discriminatory intimidation,
> ridicule, and insult that is sufficiently severe or pervasive to alter
> the conditions of the victim's employment and create an abusive
> working environment."

Rattigan v. Gonzales, 503 F. Supp. 2d 56, 78 (D.D.C. 2007) (quoting Oncale v. Sundowner

Offshore Services., Inc., 523 U.S. 75, 78 (1998)).  The indignities Mr. Pearsall identifies simply

do not meet this standard.  Rather, they are "ordinary tribulations of the workplace" which fall

outside the purview of Title VII.  Rattigan v. Gonzales, 503 F. Supp. 2d at 73.  Indeed, Mr.

Pearsall appears to concede the point, as he fails to contest DOJ's argument on this score.

---

[9]     Mr. Pearsall acknowledges that he never raised a hostile work environment claim at the administrative level, but maintains that he can assert one now because it is "like or related to" a claim that *was* timely asserted and exhausted: his claim that the 2002 transfer was retaliatory.  See Opp. at 24-25.  The problem with this argument is that while Mr. Pearsall did claim that his 2002 transfer was retaliatory at the administrative level, *that claim was neither timely asserted nor exhausted*.  See *supra* at 13-14.

[10]    Mr. Pearsall argues that DOJ created a hostile work environment by (1) assigning him substandard office space; (2) denying him training; (3) denying him the opportunity to telecommute on a temporary basis for medical reasons; (4) excluding him from certain meetings; and (5) generally underutilizing his skills and experience.  See Compl. ¶¶ 25-29.

2.  Count Two (Non-Selection Claim)

In Count Two, Mr. Pearsall alleges that DOJ retaliated against him and

discriminated against him on the basis of race, sex and age when it failed to select him for the

2004 SSSA position.  See Compl. ¶¶ 30-40.[11]  DOJ maintains that it is entitled to summary

judgment on this claim because it has asserted legitimate, non-discriminatory reasons for not

selecting Mr. Pearsall, and because Mr. Pearsall has failed to produce evidence that these reasons

are a pretext for discrimination.

> The D.C. Circuit recently held that
>
> [i]n a . . . disparate-treatment suit where an employee has suffered
> an adverse employment action and an employer has asserted a
> legitimate, non-discriminatory reason for the decision, the district
> court need not – *and should not* – decide whether the plaintiff
> actually made out a *prima facie* case under <u>McDonnell Douglas</u>.
> Rather, in considering an employer's motion for summary
> judgment or judgment as a matter of law in those circumstances,
> the district court must resolve one central question:  Has the
> employee produced sufficient evidence for a reasonable jury to find
> that the employer's asserted non-discriminatory reason was not the
> actual reason and that the employer intentionally discriminated
> against the employee on the basis of race, color, religion, sex, or
> national origin?

<u>Brady v. Office of the Sergeant at Arms</u>, 520 F.3d 490, 492 (D.C. Cir. 2008) (citing <u>St. Mary's</u>

<u>Honor Society v. Hicks</u>, 509 U.S. 502, 514-15 (1993); <u>U.S. Postal Service Board of Governors v.</u>

<u>Aikens</u>, 460 U.S. 711, 716 (1983)) (emphasis in original).

---

[11]     It is clear from Mr. Pearsall's complaint and his papers that the gravamen of
Count Two is that he was not selected for the 2004 SSSA position for *discriminatory* reasons.
To the extent that Mr. Pearsall still maintains that his non-selection was also *retaliatory*, Count
Two, like Count Five, must fail for lack of evidence of causation.  See *supra* note 7.

According to DOJ, Ms. Cammarata hired Dr. Scheider because she and the other two members of the selection panel believed that he was better qualified (particularly with respect to research and analysis skills, which Ms. Cammarata considered very important), had a better interview, and had excelled in various roles – including leadership and supervisory roles – within COPS.  See Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute ¶¶ 14-19.  DOJ also claims that Ms. Cammarata's decision was based, in part, on first-hand observations of both Dr. Scheider's and Mr. Pearsall's performance at COPS – observations that favored Dr. Scheider.  See id. ¶¶ 19-21.  Mr. Pearsall attempts to survive summary judgment by demonstrating that a reasonable factfinder could conclude that these justifications are not only inaccurate, but also that DOJ has asserted these justifications in order to cover up discriminatory and retaliatory motives.  See Aka v. Washington Hospital Center, 156 F.3d at 1294 ("In an appropriate case, the factfinder's disbelief of the reasons put forward by the defendant will allow it to infer intentional discrimination. . . .  If disbelief is accompanied by a suspicion of mendacity, . . . the likelihood of intentional discrimination is increased, permitting the factfinder to infer discrimination more readily.") (internal quotation marks and modifications omitted).  Mr. Pearsall has two principal arguments on this score.  Because the Court rejects both arguments, DOJ is entitled to summary judgment on Count Two.[12]

---

[12]      Mr. Pearsall also argues, in passing, that a reasonable factfinder could conclude that he was discriminated against because there is evidence that Dr. Scheider was "groomed" or "preselected" for the 2004 SSSA position.  See Compl. ¶¶ 37-38; Plaintiff's Statement of Material Facts In Dispute ¶ 13.  This argument fails because "[p]reselection . . . does not violate [the anti-discrimination laws] when such preselection is based on the qualifications of the party and not on some basis prohibited by [the anti-discrimination laws]."  Nyunt v. Tomlinson, 543 F. Supp. 2d 25, 39 (D.D.C. 2008) (quoting Goostree v. Tennessee, 796 F.2d 854, 861 (6th Cir. 1986)).  As discussed below, Mr. Pearsall offers no evidence from which a reasonable factfinder could conclude that Dr. Scheider was preselected for discriminatory reasons.

*a.   "Qualifications Gap" Argument*

First, Mr. Pearsall argues that his qualifications are vastly superior to Dr.

Scheider's – so much so that DOJ's claim that it selected Dr. Scheider solely on the basis of his

qualifications is incredible.  Specifically, Mr. Pearsall argues that (1) the SSSA position

description "put[] the highest priority on supervisory and managerial functions," Opp. at 41;

(2) Mr. Pearsall has many years of supervisory experience while Dr. Scheider has much less; and

(3) a reasonable factfinder could conclude from this qualifications gap that DOJ's purported

reliance on Dr. Scheider's qualifications is "a pretextual cover for [a] discriminatory selection."

Id.[13]  The Court disagrees.

It is true that a factfinder may infer pretext (and hence discrimination) if "a

reasonable employer would have found the plaintiff to be significantly better qualified for the

job."  Aka v. Washington Hospital Center, 156 F.3d at 1294.  Nevertheless, because courts do

not serve as "super-personnel department[s] that reexamine[] an entity's business decisions,"

Holcomb v. Powell, 433 F.3d at 897 (internal quotation marks and citation omitted), "[a] plaintiff

asserting that an employer's explanation is pretextual based upon comparative qualifications

faces a formidable task."  Nyunt v. Tomlinson, 543 F. Supp. 2d at 39.  "[I]n order to justify an

inference of discrimination, the qualifications gap must be great enough to be inherently

indicative of discrimination."  Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal

quotation marks and citation omitted).

---

[13]     According to the official description, 45% of the SSSA position entails exercising
supervisory and/or managerial authority (*e.g.*, "leading support for designing, implementing,
monitoring and assessing national level programs"); 40% entails planning research projects and
coordinating group efforts on those projects; and 15% entails attending and planning conferences
and similar activities.  See Mot., Ex. 6, Position Description at 1-3.

Here, all acknowledge that Mr. Pearsall has more years of supervisory experience than Dr. Scheider.  But in the context of this case, that alone does not constitute a qualifications gap so "wide and inexplicable" as to support an inference of discrimination.  Lathram v. Snow, 336 F.3d 1085, 1091 (D.C. Cir. 2003).  First, it is not as if Dr. Scheider has no supervisory experience.  See Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute ¶ 16 (describing Dr. Scheider's leadership experience within COPS).  Indeed, Mr. Pearsall concedes that Dr. Scheider's supervisory experience qualifies him for the position.  See Plaintiff's Statement of Material Facts In Dispute ¶ 13.  Second, Mr. Pearsall accumulated nearly all of his supervisory experience – unlike Dr. Scheider – outside of COPS.  See Reply at 14-15; cf. Horvath v. Thompson, 329 F. Supp. 2d 1, 8 & n.6 (D.D.C. 2004) (noting that "it was within the selecting official's prerogative to place greater value on [the selectee's] managerial experience and her more extensive experience within the [relevant department]").  Third, the SSSA position description did not call for a large amount of supervisory *experience*; it contemplated a large amount of supervisory *responsibility*.  See Mot. at 14.  Thus, the fact that DOJ selected the candidate with less supervisory experience hardly supports an inference of pretext here.  In sum, this is one of those cases in which only "nuanced differences" distinguish the plaintiff's credentials from the selectee's credentials.  Thus, the "qualifications differential" identified by Mr. Pearsall "'merely indicate[s] [that DOJ had to make] a 'close call'" and "fails to move [his] case 'beyond summary judgment.'"  Barnette v. Chertoff, 453 F.3d 513, 518 (D.C. Cir. 2006) (quoting Stewart v. Ashcroft, 352 F.3d at 430).  See also Horvath v. Thompson, 329 F. Supp. 2d at 7.

b.  *"Dubious Reasons" Argument*

Second, Mr. Pearsall argues that "Ms. Cammarata's [p]roffered [r]easons for
[s]electing Mr. Scheider [o]ver Mr. Pearsall are [d]ubious."  Opp. at 44.  Specifically, he attacks
as inaccurate and mendacious Ms. Cammarata's reliance on (1) her relatively unfavorable
impression of Mr. Pearsall's work performance; (2) her relatively unfavorable impression of Mr.
Pearsall's interview; and (3) her claim that she hired Dr. Scheider largely because she was
focusing "on the research components of the Supervisory Social Science Analyst position[.]"
Opp. at 48.  Mr. Pearsall fails to identify any evidence from which a reasonable jury could
conclude that these reasons are substantively inaccurate or dishonestly asserted.

Mr. Pearsall argues that a reasonable factfinder could disbelieve Ms. Cammarata's
claim that she relied on a relatively unfavorable impression of Mr. Pearsall's work performance
because such an impression would be unreasonable.  See Opp. at 45.  It would be unreasonable,
argues Mr. Pearsall, because (1) he received good reviews from other supervisors, and (2) he
received a performance award while at COPS.  Moreover, Mr. Pearsall suggests that a reasonable
factfinder could conclude that Ms. Cammarata is lying about having an unfavorable impression
of his work performance because she praised his work on at least one occasion.  See id. at 45-46.
The Court disagrees.  Reviews of other supervisors do nothing to call into question the accuracy
of Ms. Cammarata's first-hand observations of Mr. Pearsall's performance under *her*
supervision, nor do they suggest that Ms. Cammarata is lying about *her* impressions of Mr.
Pearsall's work performance.  Similarly, it is difficult to see how the mere fact that Mr. Pearsall
once received a performance award indicates that Ms. Cammarata's asserted views of Mr.
Pearsall's all-around performance as compared to Dr. Scheider's all-around performance are

21

incorrect, misleading, or both.  Finally, Ms. Cammarata's praise for Mr. Pearsall under one set of circumstances does not undermine her assertion that he did not perform well in other situations, nor does it indicate that she is lying when she says that she rated Dr. Scheider's performance more highly.

Mr. Pearsall also argues that a reasonable factfinder could disbelieve Ms. Cammarata's claim that she relied on an unfavorable impression of Mr. Pearsall's interview. See Opp. at 46.  Specifically, Mr. Pearsall argues that a reasonable factfinder could conclude that Ms. Cammarata's reliance on the candidates' interviews is pretextual merely because the conclusions she purportedly drew from those interviews were "subjective."  Id.  That is incorrect. "A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion." Laboy v. O'Neill, 180 F. Supp. 2d 18, 23 (D.D.C. 2001).  The record indicates that the subjective conclusions Ms. Cammarata purportedly drew from the candidates' interviews were indeed based on specific facts, such as Dr. Scheider's high level of preparation for his interview. See Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute ¶ 18.

Lastly, Mr. Pearsall argues that a reasonable factfinder could disbelieve Ms. Cammarata's claim that she focused on research and analsyis skills during the selection process because a focus on those skills is inconsistent with the official description of the SSSA position. See Opp. at 48 ("Cammarata's claim that she was putting a greater focus on the research components of the [position] is belied by the fact that the position description . . . states that 45% of the [SSSA position] entails [exercising supervisory authority].").  The theory here, it seems, is that DOJ cannot defend its decision in terms of the position description, and therefore has

concocted another reason for selecting Dr. Scheider: that is, Dr. Scheider's research and analysis skills.  The Court disagrees with this argument because it is inconsistent with the very position description on which it relies.  As noted above, according to the official position description, the SSSA position entails nearly equal amounts of supervisory responsibility (45%) and research-and-analysis-related responsibility (40%).  Thus, nothing about the position description suggests that Ms. Cammarata is being untruthful when she claims to have weighed heavily the candidates' research and analysis skills – or that there was anything improper about her doing so.  See, e.g., Jackson v. Gonzales, 496 F.3d at 709 (declining to "second-guess how an employer weighs particular factors in the hiring decision"); Barnette v. Chertoff, 453 F.3d at 517 (noting that "courts must defer to the employer's decision as to which qualities required by the job (substantive versus managerial) it weighs more heavily").

For these reasons, the Court issued an Order and Judgment on September 29, 2008 (1) granting DOJ's motion in its entirety, (2) dismissing with prejudice all of Mr. Pearsall's claims except Count Two, and (3) entering judgment in DOJ's favor on Count Two.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 28, 2009